697 P.2d 1239

STATE of Idaho, Plaintiff and
Respondent,

v.

Roger Kim FAIRCHILD, Defendant
and Appellant.

No. 13893.

Court of Appeals of Idaho.

March 28, 1985.

Victor J. Rolzitto, Ketchum, for defendant and appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Lance D. Churchill, Steven W. Berenter (argued), Deputy Attys. Gen., Boise, for plaintiff and respondent.

BURNETT, Judge.

Roger Kim Fairchild stands convicted of possessing cocaine with intent to deliver. On appeal he raises a host of issues concerning denial of a speedy trial, failure to suppress illegally seized evidence, and prosecutorial misconduct during his trial. For reasons explained below, we deem the speedy trial issue to be dispositive and we reverse the judgment of conviction.

This unusual case presents a convoluted procedural history. Fairchild was arrested on February 27, 1978. For reasons undisclosed by the record, a criminal complaint was not filed until April 14. Fairchild promptly filed a "Plea of Not Guilty and Demand for Speedy Jury Trial." A preliminary hearing was conducted on May 15–16, 1978. During the hearing Fairchild urged that much of the state's evidence was suppressible and, therefore, should not be considered in determining whether probable cause existed. The prosecutor argued that any suppression issue should be reserved for the district court. The magistrate, noting that support for both arguments could be found in the then-existing Rules of Criminal Practice and Procedure, agreed to consider the suppression question.[1] On July 5, 1978, following the preliminary hearing, the magistrate dismissed all charges against Fairchild. In a subsequent memorandum opinion, dated August 4, 1978, the magistrate held, in essence, that critical evidence against Fairchild was suppressible and that probable cause did not exist without it.

The prosecutor appealed the dismissal order to the district court. However, the record reflects no action on the appeal until June, 1979, when the prosecutor apparently requested a hearing and filed a memorandum in support of the state's position. At approximately the same time, Fairchild moved to dismiss the appeal for undue delay. The district court heard argument on July 20, 1979, and later issued a memorandum opinion, dated August 24, 1979, holding that the evidence in question was not suppressible. The district judge remanded the case to the magistrate for a redetermination of probable cause. On October 17, 1979, the magistrate, taking note of the district judge's decision, made a determination of probable cause. On October 24, 1979, the prosecutor filed an information in the district court. Fairchild was tried and found guilty on June 30, 1980, some twenty-eight months after his arrest. He was sentenced to an indeterminate period not exceeding five years in the custody of the Board of Correction. However, he was allowed to remain free on bond pending appeal.[2]

■ A person accused of crime is entitled to a reasonably prompt determination of whether he is, in fact, guilty as charged. The fourteenth amendment to the United States Constitution protects against unfairness caused by delay. This protection is augmented by the right to a speedy trial

---

1. The Idaho Criminal Rules, presently in effect, continue to impose responsibilities upon magistrates as well as district judges with respect to suppression issues. Rule 12(b)(3) provides for suppression motions to be made in the district court. However, Rule 5.1(b) provides as follows: "Motions to suppress must be made in a trial court as provided in Rule 12; provided, if at the preliminary hearing the evidence shows facts which would ultimately require the suppression of evidence sought to be used against the defendant, such evidence shall be excluded and shall not be considered by the magistrate in his determination of probable cause."

2. Judgment and sentence were pronounced orally by the court on September 3, 1980. A notice of appeal was filed on that day. Although premature when filed, we hold the notice of appeal sufficient to invoke appellate jurisdiction. See State v. Gissel, 105 Idaho 287, 668 P.2d 1018 (1983). The long duration of this appeal has been due in part to delays by both parties in filing briefs and to numerous additions to the record, the last of which was filed by order of the clerk of the Supreme Court/Court of Appeals on January 16, 1985.

afforded by the sixth amendment. Similar, but not necessarily identical, provisions concerning due process and the right to a speedy trial are contained in article 1, § 13, of the Idaho Constitution.

The United States Supreme Court has identified a fundamental distinction between the right to a speedy trial and the due process right to a fair trial:

> Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

*United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971). This distinction recently has been reemphasized:

> The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982). Consequently, although prejudice is relevant to a speedy trial issue, *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), it is not the controlling factor. The primary focus is upon undue delay.

The speedy trial provision of the Idaho Constitution is further distinguished by its close nexus to other Idaho laws establishing specific time frames for criminal proceedings. For example, the Idaho Supreme Court has held that article 1, § 13, is deemed to be supplemented by I.C. § 19–3501, a statute which at various times in its history has required criminal cases to be tried within six months, or within the next full term of court, after the prosecutor's information has been filed. *E.g., State v. Hobson,* 99 Idaho 200, 579 P.2d 697 (1978). Another specific time frame, no longer in existence but extant at times pertinent to the instant case, is found in Rule 11 of the Idaho Criminal Appellate Rules. This rule governed criminal appeals from the magistrate division to the district court until it was rescinded on July 1, 1980. It provided that all such appeals "must be heard and determined not later than the first term of the district court after the record is filed unless continued on motion of or with the consent of the defendant." Our attention is invited to Rule 11 because the largest single component in the twenty-eight month delay from Fairchild's arrest to his trial was the period of approximately thirteen months consumed by the prosecutor's appeal of the magistrate's initial order dismissing the charges.

Neither party has cited authority dealing specifically with the question whether time absorbed by a prosecutor's appeal from a magistrate's dismissal of charges is germane to a speedy trial claim. However, we believe it is. When charges in this case were dismissed, the prosecutor had, so far as he knew, a choice between appealing the decision and refiling the charges. We now know, of course, that this choice was illusory because our Supreme Court subsequently held such an appeal to be improper. *State v. Ruiz,* 106 Idaho 336, 678 P.2d 1109 (1984). However, the prosecutor's belief at the time was reasonable. We do not deem the time consumed by the appeal to be cognizable in a

speedy trial inquiry simply because the appeal turned out to be improper. *Cf. Olson v. State*, 92 Idaho 873, 452 P.2d 764 (1969) (reasonable assumption by prosecutor, though later found to be in error, not counted against the state in measuring delay). Rather, the appeal is cognizable because we believe that the prosecutor, having made his choice, was obliged to pursue the appeal diligently.

■ Our view of the prosecutor's duty takes account of an important difference between a delay in adjudicating guilt on charges initially filed and a delay in refiling after the original charges have been dismissed. The latter type of delay does not infringe upon speedy trial rights. As the United States Supreme Court noted in *United States v. MacDonald, supra:*

> Once charges are dismissed, the speedy trial guarantee is no longer applicable. At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation. Certainly the knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life.... But with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending.

456 U.S. at 8–9, 102 S.Ct. at 1502–1503. *Accord State v. Ruiz, supra; State v. Goodmiller*, 86 Idaho 233, 386 P.2d 365 (1963). In contrast, when a dismissal is appealed, it extends the time for adjudicating the original charges. The defendant is still in court. He faces an unremitting burden of responding to public charges of criminal conduct. The values protected by the speedy trial guarantee remain at risk. Accordingly, in this case, we hold that the time absorbed by the prosecutor's appeal is cognizable in evaluating Fairchild's speedy trial claim.

■ The remaining question is whether the time from accusation to trial was impermissibly prolonged by delay during the prosecutor's appeal. To answer this question we return to Rule 11, I.C.A.R. As mentioned above, this rule, when in effect, required an appeal from the magistrate division to the district court to be heard and decided not later than the first term of court after the record was filed. Here, the transcript of proceedings in the magistrate division was filed in the district court on December 21, 1978. It appears undisputed that the terms of the district court commenced on January 7 and July 6 of each year. Consequently, Rule 11 required the prosecutor's appeal to be heard and decided prior to July 6, 1979. However, as we have seen, the prosecutor neither filed a brief nor requested a hearing on his appeal until June 22, 1979. Thereafter, the district court, acting with what appears to have been reasonable dispatch, conducted a hearing on July 13 and issued its decision on August 24. But by then the time consumed by the appeal already had exceeded the maximum allowed by Rule 11. There is no indication in the record that Fairchild contributed or consented to any of this delay. The prosecutor, in the hearing before the district court, acknowledged the delay but offered no justification for it.[3]

Rule 11, while in effect, represented a clear statement by our Supreme Court that a criminal appeal to the district court should be processed diligently. It prescribed an outside time limit for disposing of such an appeal. Although it did not speak directly to an accused person's right to a speedy trial, it plainly established the accused's right to speedy disposition of a prosecutor's appeal from the dismissal of charges. The rule thereby imparted specific meaning to the speedy trial right where, as here, delay was caused largely by a prosecutor's appeal.

The discrete standard set forth in Rule 11 was analogous to that provided in I.C. § 19-3501. At times pertinent to this case, both the statute and the rule contained time frames for criminal proceedings, ex-

---

3. The attorney's candor is commendable. By our opinion today, we intimate no view that the prosecutor, whom we believe to be capable and industrious, would intentionally cause delay.

pressed by reference to terms of court.[4] These references were consistent with article 5, § 11, of the state constitution, requiring district courts to convene at least twice annually in each county and "to continue for such time . . . as may be prescribed by law." In 1975 the Legislature repealed I.C. § 1–706, which had reiterated the requirement that district courts convene at least twice per year. This legislative act carried two distinct consequences. First, it neutered I.C. § 19–3501 from 1975 until that statute was amended in 1980. *See generally, e.g., State v. Carter,* 103 Idaho 917, 655 P.2d 434 (1981). Secondly, the repeal of I.C. § 1–706 left solely with the Supreme Court the task of implementing article 5, § 11. The Court addressed this subject in the separate contexts of civil and criminal cases. In 1975 the Court promulgated I.R.C.P. 77(a):

> All courts shall be deemed to be in continuous session. . . . *For purposes of these rules governing procedure in civil actions,* the definitions of chambers of court, terms of court, vacations of court and adjournments of hearings are hereby abolished. [Emphasis added.]

By its own terms, I.R.C.P. 77(a) did not abolish terms of court in criminal proceedings. I.C.A.R. 11 remained unaffected. Five years elapsed before the Supreme Court adopted the Idaho Criminal Rules, effective July 1, 1980, supplanting the Idaho Criminal Appellate Rules and expressly abolishing terms of court in criminal cases. *See* Rule 50, I.C.R. Consequently, the time limit prescribed by I.C.A.R. 11 was applicable to this case. It governed the prosecutor's appeal from the magistrate division to the district court during 1978 and 1979.

In argument before us, the state, like the prosecutor below, has offered no justification for the violation of Rule 11. Rather, the state has contended, in essence, that the violation was inconsequential and should be disregarded. We disagree. Although Rule 11 contained no specific remedy for a violation, we do not take this to signify that the rule was meaningless. Rules of our Supreme Court are there to be followed. Rule 11 established a clear and discrete standard that cannot now be ignored.

The state also has argued that Fairchild brought the delay upon himself by improperly raising the suppression issue at the preliminary hearing. Again, we disagree. As noted earlier, the rules in effect during 1978, and those in effect today, allow a magistrate to exclude suppressible evidence when determining probable cause. In any event, the problem here is not that the suppression issue led to an appeal. Rather, it is that the appeal was not diligently pursued.

■ Finally, the state contends that the record shows no prejudice arising from the delay. Fairchild responds that the passage of time affected critical testimony at trial by a law enforcement officer. The record on this point is far from conclusive. In any event, it is not clear what weight, if any, should be given to prejudice, or the lack of it, in this case. In *State v. Hobson,* 99 Idaho 200, 579 P.2d 697 (1978), our Supreme Court held that a balancing approach to speedy trial issues—in which prejudice is weighed along with other factors—would not apply to the Idaho constitutional guarantee, as supplemented by I.C. § 19–3501, if the time limit imposed by the statute were violated and the state failed to show good cause for the violation. Here, the time limit imposed by I.C.A.R. 11 has been violated and the state has failed to show good cause for the violation. Consistent with *Hobson,* we believe the balancing approach to be inapposite in this type of case.

■ In light of recent controversy over *Hobson* within our Supreme Court, as reflected by the majority and dissenting opin-

---

4. In 1978, I.C. § 19–3501 provided that "[t]he court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed. . . . [i]f a defendant, whose trial has not been postponed upon his application, is not brought to trial at the next term of the court. . . ." In 1980, the reference to terms of court was eliminated and a six-month period was substituted. *See* 1980 Idaho Sess. Laws ch. 102, § 1, pp. 226–27.

ions filed in *State v. Russell,* 108 Idaho 58, 696 P.2d 909 (1985), we deem it appropriate to add that we would find a denial of speedy trial in this case even if a balancing test were employed. The balance turns upon the length of the delay, the reasons for it, the accused's assertion of his right to a speedy trial, and the existence of prejudice. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Here, the delay was sufficient to infringe upon the right to a speedy trial. Although the state was not at fault for the entire twenty-eight month period from arrest to trial, the state manifestly bore chief responsibility for the time consumed by the thirteen-month appeal to the district court. No justification was offered for the undue delay occasioned by the appeal. Fairchild had timely asserted his demand for a speedy trial. These factors are not outweighed, in our estimation, by the lack of a cogent showing of prejudice. To hold otherwise would make prejudice such a dominant criterion that the balancing approach would be virtually nullified. An accused person's right to a speedy trial, as distinguished from his right to a fair trial, would be defeated.

The proper appellate response to an infringement of the right to a speedy trial is to set aside the conviction. We do not take such action lightly but believe it to be our duty under the unique circumstances presented here. Accordingly, the judgment of conviction in this case is reversed.

WALTERS, C.J., and SWANSTROM, J., concur.