718 P.2d 1272

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Landis DILLARD, Jr.,
Defendant-Appellant.**

**No. 15716.**

Court of Appeals of Idaho.

May 7, 1986.

Rehearing Denied May 7, 1986.

Petition for Review Denied
June 18, 1986.

Mark L. Clark, Nampa, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

## ON DENIAL OF PETITION FOR REHEARING

This Opinion Supercedes The Prior Opinion Issued February 3, 1986, Which is Withdrawn.

WALTERS, Chief Judge.

This is an appeal from a judgment of conviction for first degree murder and for first degree arson. The appellant, Landis Dillard, Jr., contends he was denied his right to a speedy trial and that he was deprived of effective assistance of counsel and due process when his trial attorney failed to timely file an appeal.[1] The state contends Dillard's appeal is jurisdictionally defective and should be dismissed. We affirm the judgment of conviction.

This case comes to us with the following background. In March 1978, a petition under the Youth Rehabilitation Act, I.C. §§ 16–1801 to –1845, was filed against Dillard, while he was a minor under the age of eighteen, alleging that he had murdered one Ruth Madsen. Apparently, arson occurred in an attempt to cover up the murder. The state sought waiver of Dillard's juvenile status, so he could be charged and tried as an adult. Dillard resisted the waiver adjudication and the proceeding wound its way through the lower courts to the Idaho Supreme Court. In February 1981, the Idaho Supreme Court upheld a determination by the district court that Dillard should be tried as an adult. *Dillard v. State*, 101 Idaho 917, 623 P.2d 1294 (1981). Thus, an information was filed on March 20, 1981, charging Dillard with first degree murder and with first degree arson. Trial was held in December, 1981, and the jury returned verdicts of guilty on both counts. A judgment of conviction was entered on April 30, 1982. Dillard received an indeterminate life sentence for the homicide and a

---

1. In his opening brief on appeal, Dillard also raised an issue concerning his sentencing procedure. As will be more fully disclosed in the text of our opinion, the trial court granted post-conviction relief to Dillard by vacating and then re-entering a judgment of conviction, in order to allow Dillard the right to timely appeal from his convictions. In so doing, the court also vacated and then reimposed Dillard's sentences for the crimes. The court accomplished this by written order without Dillard being present. On this appeal Dillard initially questioned whether the procedure was proper because he was not present before the court when the sentences were reimposed. *See* I.C. § 19–2503; I.C.R. 43.

After the state responded to this issue in its brief on appeal, Dillard then abandoned the issue in his reply brief, conceding that no error had occurred. While it is error to sentence a felony defendant in his absence, *see e.g., State v. Lopez,* 108 Idaho 394, 700 P.2d 16 (1985); *State v. Creech,* 105 Idaho 362, 365 n. 1, 670 P.2d 463, 466 n. 1 (1983); *State v. Hoffman,* 108 Idaho 720, 701 P.2d 668 (Ct.App.1985), we believe that such an error is not jurisdictional and may be waived as an issue on appeal, as Dillard has done in this case.

concurrent ten-year indeterminate sentence for arson.

In August 1984, Dillard filed, *pro se,* an amended application for post-conviction relief. He alleged that he had been denied due process when his court-appointed trial attorney failed to appeal from the judgment of conviction, after Dillard had requested that an appeal be taken. The district court granted relief to Dillard by vacating the April 1982 judgment and sentences, and by re-entering the judgment of conviction and sentences effective August 29, 1984 "so that [he] may perfect a timely appeal from his convictions for Murder and Arson." The district court appointed new counsel to represent Dillard and a notice of appeal from the judgment of conviction was thereafter filed on Dillard's behalf.

I

Before addressing Dillard's contentions that he was denied his right to a speedy trial and to effective assistance of counsel, we will discuss the state's threshold argument that this appeal is jurisdictionally defective. The state has not appealed from the disposition made by the district court on Dillard's post-conviction application. However, the state urges that Dillard's right to appeal was improperly revived by the district court. The state directs our attention to the order entered by the district court in response to Dillard's application for post-conviction relief. The ultimate disposition made by the court was to dismiss the application. The state argues that because the district court dismissed the application the court was without jurisdiction or authority to vacate the previously entered judgment of conviction and sentences for the sole purpose of reinstating Dillard's right to a direct appeal of his convictions.

We disagree. The order included a memorandum decision disclosing the court's rationale for the order. When reviewed in its entirety, the order clearly shows that the court granted Dillard appropriate relief on his application. The order recites:

Idaho's Uniform Post-Conviction Act, I.C. § 19–4907, provides in pertinent part: "If the court finds in favor of the applicant, it shall enter an appropriate order with respect to the conviction or sentence in the former proceedings, and any supplementary orders as to rearraignment, retrial, custody, bail, discharge, correction of sentence, *or other matters that may be necessary and proper."* (emphasis [added by district judge]).

The Court has consulted with the Prosecuting Attorney and defense counsel and finds that no appeal was in fact filed and no cause can be shown for an appeal not being filed. The Court accordingly follows the opinion of the Idaho Court of Appeals in the case of *Gilbert Flores v. The State of Idaho,* 104 Idaho 191 [657 P.2d 488], and the Virginia case of *Rhodes v. Leverette,* [160 W.Va. 781], 239 S.E.2d 136, and hereby Orders that the Judgment and sentence imposed in Canyon County Case Number C–5034 on the the 30th day of April, 1982, be vacated. The Judgment of Conviction and sentence is re-entered effective the 29th day of August, 1984, so that Landis Dillard, Jr., may perfect a timely appeal from his convictions for Murder and Arson.

. . . . .

The Court further concludes that, *with this relief granted,* there is no remaining viable issue in the Post-Conviction Relief proceeding and hereby serves notice of intent to dismiss the Petition [for post-conviction relief]. [Emphasis supplied.]

In its disposition of Dillard's application, the district court found guidance from our opinion in *Flores v. State,* 104 Idaho 191, 657 P.2d 488 (Ct.App.1981). Flores had been convicted of manslaughter. He later filed an application for post-conviction relief asserting, in part, that he had been denied effective assistance of counsel when no direct appeal from his conviction had been filed. He further alleged that he had repeatedly asked his attorney to perfect an

appeal. Flores' application for relief was summarily dismissed by the district court. On appeal, we held that if Flores' allegations were true and if the attorney's inaction caused Flores not to appeal, he would be entitled to relief on his post-conviction application. We concluded the district court erred in summarily dismissing the application, and we remanded the case for an evidentiary hearing on the failure-to-appeal issue. Applying the rule in *Samuels v. United States*, 435 A.2d 392 (D.C.App. 1981) and *Hines v. United States*, 237 A.2d 827 (D.C.App.1968), we instructed the district court as follows:

> Should the court determine that Flores' counsel failed to file an appeal, after Flores instructed him to do so, and such failure deprived Flores of his opportunity to appeal, then the proper remedy is for the court, by order, to vacate and re-enter the judgment of conviction so that Flores might perfect a timely appeal.

104 Idaho at 195, 657 P.2d at 492. *See also Evitts v. Lucey*, 469 U.S. 387, — n. 10, 105 S.Ct. 830, 838 n. 10, 83 L.Ed.2d 821 (1985), *citing Rodriguez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *United States v. Winterhalder*, 724 F.2d 109 (10th Cir.1983); *and Stahl v. Commonwealth*, 613 S.W.2d 617 (Ky.1981).

■ With one slight difference, the action of the district court in this case comported with the directive in *Flores*. The only deviation occurred when the court below did not conduct an evidentiary hearing. Instead, when faced with the questions of whether an appeal had been filed and, if not, whether Dillard's attorney was at fault in not filing an appeal, the district court apparently informally consulted with the prosecutor and with Dillard's trial counsel. Based upon that investigation, the court concluded that "no appeal was in fact filed and no cause can be shown for an appeal not being filed." Dillard had attached to his application for post-conviction relief his

affidavit stating that he had requested his trial attorney to file an appeal and that he was assured by a letter from his counsel (a copy of which was also attached to the affidavit) that an appeal would be filed "within a short period of time." The letter was dated twelve days after the judgment of conviction had been entered and was well before the expiration date for timely filing a notice of appeal. We believe that under the circumstances the district court did not err either in concluding that Dillard was entitled to relief or in granting relief by vacating and then reimposing the judgment of conviction and sentences in order to accord Dillard a right to timely appeal from the convictions.

We hold that this appeal is not "jurisdictionally defective" and therefore we deny the state's request that the appeal be dismissed. We turn now to Dillard's issues on appeal.

## II

Dillard's first issue is stated in his brief as follows:

> The trial court erred in not granting Defendant's motion to dismiss for denial of a speedy trial within the meaning of *Idaho Code* § 19–3501, the Sixth Amendment of the Constitution of the United States of America and Article 1, § 13 of the Constitution of the State of Idaho.

Dillard's stated issue requires consideration of four different aspects of his alleged denial of a speedy trial. First, was Dillard's statutory right to a speedy trial (I.C. § 19–3501) violated? Second, was Dillard's right to a speedy trial under the federal constitution violated? Third, was Dillard's right to a speedy trial under the Idaho Constitution violated? We will consider each of these questions, to determine, as the fourth aspect, whether the trial court erred in denying Dillard's motion to dismiss. The various statutory and constitu-

tional provisions invoked by Dillard are set forth below.[2]

## A

Dillard was arraigned in district court on March 20, 1981, the same day an information was filed against him charging the homicide and arson. Dillard entered pleas of not guilty to each charge. During the course of the arraignment, court and counsel discussed the matter of a trial setting and the number of days a trial might take. Both counsel agreed the case would take ten days to two weeks for trial. Defense counsel requested a pretrial motion hearing for the case. The court set April 15 as the date for motion hearing. In response to an inquiry from defense counsel whether all pretrial motions must be submitted by April 15, the court stated:

COURT: Well, I'm not going to put an absolute lid on that, no, because I—I don't think you have had an opportunity to do all of the investigatory and—and it may lead to other discovery, and I don't want to do that; but what I thought we would do after you get through with those motions, if it's still necessary to do so, that we would set a trial date at that time.

To which defense counsel responded:

Fine, that's what I hoped the Court's ruling was.

On April 15 counsel presented evidence in respect to a motion to suppress filed by the defendant. The motion was taken under advisement, pending submission of briefs by the parties. Within a few days after submission of the motion to suppress, Dillard filed a notice of intent to rely on mental disease or defect as a defense. He also moved to dismiss the information on the ground he had been denied his right to a speedy trial under I.C. § 19–3501, under the sixth amendment to the United States Constitution and under art. 1, § 13 of the state constitution. In addition, he moved for an order changing trial venue to another county.

On August 5, 1981, the court entered an order granting Dillard's motion to suppress, in part, and denying the motion in part. In that same order the court also set the case for jury trial commencing on October 13, 1981, and requested defense counsel to notice for hearing the motions to dismiss and to change venue. The motions to dismiss and to change venue were thereafter heard on September 9, 1981. At the conclusion of that hearing, the court granted the request to change venue, and took the motion to dismiss under advisement.

At the hearing on his motion to dismiss, Dillard's counsel argued that an information had not been filed within six months of his arrest (I.C. § 19–3501(1)). He also argued that Dillard had not yet been brought to trial within six months from the date the information was filed (I.C. § 19–3501(2)). He further argued generally the applicability of the *Barker-Wingo* criteria [3] for determining constitutional speedy trial rights in

---

2. When the information was filed against Dillard, Idaho Code § 19–3501 provided as follows:

*When action may be dismissed.*—The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:

1. When a person has been held to answer for a public offense, if an indictment or information is not found against him and filed with the court within six (6) months from the date of his arrest.

2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court.

The sixth amendment to the United States Constitution recites in part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy trial and public trial, ...

Article 1, § 13 of the Idaho Constitution states:

In all criminal prosecutions, the party accused shall have the right to a speedy and public trial; ...

3. The United States Supreme Court, in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), announced a four-part balancing test to determine whether the federal constitutional right to a speedy trial has been denied. The test considers the length of the delay, the reasons for the delay, the accused's assertion of his

light of the expiration of time since Dillard was taken into custody in March 1978.

In response, the prosecutor argued that I.C. § 19–3501 did not apply while the issue of Dillard's status as a juvenile or adult offender was in litigation before the courts. The prosecutor suggested that only after our Supreme Court had determined Dillard should be tried as an adult, and the information was filed on March 20, 1981, would I.C. § 19–3501 even apply. The prosecutor then pointed out that six months had not yet expired from the date the information was filed. Finally, the prosecutor contended that the *Barker-Wingo* balancing test was also applicable only to that period of time which elapsed after the uncertainty over Dillard's status as a juvenile was resolved.

Following the prosecutor's argument, defense counsel acknowledged that: "The state at this time is probably in compliance with subsection (2) [I.C. § 19–3501(2)], which requires that the defendant be brought to trial within six months of the day of the Indictment [Information]," but counsel continued to assert that no indictment or information had been filed within six months of Dillard's arrest as required by I.C. § 19–3501(1).

Having heard these arguments, the trial court took Dillard's motion to dismiss under advisement. No ruling was rendered on this motion until the first morning of Dillard's trial, when, in response to an inquiry from defense counsel concerning the status of the motion, the court stated that the motion "is denied."

Although the record before us contains no statement of reasons why the trial court denied Dillard's motion to dismiss, we believe sufficient grounds can be found in the record to uphold the trial court's ruling.

Dillard had served notice that he intended to rely upon mental disease or defect excluding responsibility for the alleged crimes, as an affirmative defense. This notice was given within one month from the date of his March 1981 arraignment. Over the next ensuing several months, Dillard was examined on numerous occasions by Dr. Jones, a psychologist.

As noted, on August 5, 1981 the district court scheduled the trial for October 13, 1981. On August 25, 1981, Dillard filed a motion for permission to hire—at state expense—Dr. Lunde, a forensic psychiatrist practicing in Palo Alto, California, to assist in preparing the mental illness defense. By affidavit in support of his motion to hire the psychiatrist, Dillard disclosed that Dr. Jones had preliminarily concluded that Dillard suffered from a very rare and complex form of multiple personality disorder. In a letter from Dr. Jones to Dillard's counsel, submitted in support of the motion to hire Dr. Lunde, Dr. Jones stated:

> Because of the rareness and complexity of the disorder and the seriousness of the charges facing your client, I strongly recommend that you seek the help of a mental health professional with special experience with this disorder and its legal implications.

> After contacting several professionals throughout the western part of the United States, I've concluded that one of the few individuals who would meet the above qualifications is:

>> Donald T. Lunde, M.A., M.D. Clinical Associate Professor of Psychology and Behavioral Sciences and Lecturer in Law Stanford University

> As I told you last week, my evaluation on Mr. Dillard is not complete and I feel it's in your client's best interests that I delay

---

right, and the prejudice occasioned by the delay. Although the Idaho Supreme Court has held that the state constitutional right to a speedy trial (art. 1, § 13) is not necessarily identical to the federal constitutional right, the Court nevertheless utilized the *Barker-Wingo* balancing test to determine whether the Idaho Constitution

speedy trial right has been violated. *State v. Russell,* 108 Idaho 58, 696 P.2d 909 (1985). *See also, e.g., State v. Holtslander,* 102 Idaho 306, 629 P.2d 702 (1981); *State v. Lindsay,* 96 Idaho 474, 531 P.2d 236 (1975). We will address the *Barker-Wingo* test, in the context of Dillard's case, later in this opinion.

completing that evaluation until you have determined whether you will involve additional experts.

Furthermore, in his application to retain Dr. Lunde, Dillard's counsel reminded the court that on the charge of first degree murder Dillard potentially was subject to the death penalty.

Two hearings were held on the motion to retain Dr. Lunde. The first was on September 9, 1981, and the second two days later on September 11. At the conclusion of the proceeding, the court not only granted permission to hire Dr. Lunde but the court also appointed another, local psychiatrist to examine and evaluate Dillard's mental condition both as to competency to stand trial and as to any mental defense to the charges against Dillard.

On September 23, 1981, defense counsel moved to vacate the trial scheduled for October 13 on the grounds that Dr. Lunde would not be available to testify either during the month of October or the forepart of November because of other trial commitments. The motion to vacate was heard by the court on October 2, 1981.

The hearing on the motion to vacate the trial took an interesting twist. While Dillard's counsel firmly believed it was in Dillard's best interest to delay the trial until Dr. Lunde was available to testify, Dillard himself did not wish to vacate the October 13 date and so informed the court. Dillard requested his counsel to withdraw the motion to vacate. Faced with this situation, the court engaged in extensive dialogue with Dillard in respect to the mental illness defense. The court pointed out:

> Now I realize that you have been in jail a long time, but by withdrawing this motion [to vacate the trial], what you're asking me to do is permit you to face trial by jury on no evidence other than the testimony of the persons involved in the—at the time and place of the investigation of this homicide; and therefore, to allow you to face the verdict of that jury without the benefit of them considering

whether you were mentally disturbed at the time. In other words, removing one of the potential defenses that you have in this case.

> Have you—have you understood what I have had to say up to this point, Landis?

DEFENDANT: I got the general idea.

COURT: General idea.

> Well, have you—have you weighed that—that situation in—in requesting [counsel] to withdraw your motion and—and have you considered the fact that, as he points out, that if convicted of first-degree murder you do face the possibility of death by lethal injection under the law of the State of Idaho?

DEFENDANT: Yes.

COURT: Would you mind telling me, other than the fact that your trial would be delayed two months, why you want to go to trial without the benefit of this doctor's evaluation and—and possible testimony in your behalf?

DEFENDANT: Because I feel I been in jail three years and seven months now. I feel—I don't see in what way it would make a difference if six more weeks. I been in jail three years, seven months. If they ain't ready now, I feel six more weeks ain't gonna help.

After more dialogue along the same lines, the court ruled:

> COURT: Well, on the face of it, the motion to vacate this trial setting which is what brought us to court this morning construed with the supporting affidavit, indicates to me a valid basis for continuance. That being the fact that Dr. Lundy [sic] is not available for a trial in October because of prior commitments, and the further facts by affidavit that he will be concluded with those commitments by the 23rd of November, and would be available for testimony after that time; and considering that I believe that it is also a responsibility of the Court as well as the responsibility of

counsel to see that a defendant is afforded a fair trial, and particularly when within the contents of the file itself the Court must take notice that at least one qualified expert is of the opinion that there is a mental defense in this case in all probability; and considering further that because of the nature of the alleged mental disease or defect, that of multiple personality, that this court is not in a position to even know whether the defendant is competent to stand trial at this time, or whether the defendant is competent to direct his counsel to withdraw a motion that is valid on its face.

I conclude that in the interest of justice that it's a responsibility of this Court to see that further psychiatric evaluation is completed, and therefore the request to withdraw the motion to vacate the trial setting is denied.

The motion to vacate the trial setting is granted, ...

The trial was rescheduled for, and subsequently commenced on, December 3, 1981. The trial lasted nine days.

■ Our Supreme Court has indicated that when an alleged violation of the right to speedy trial is in issue, we should look first to determine if the statute, I.C. § 19–3501, has been abridged. *State v. Hobson,* 99 Idaho 200, 579 P.2d 697 (1978). If the statute is applicable and there is no "good cause" for the delay or the trial was not postponed at the defendant's request, then the charge against the accused must be dismissed and the inquiry is at an end. However, if I.C. § 19–3501 is not implicated, then we should next determine whether the constitutional provisions—both state and federal—relating to speedy trial have been violated. *State v. Russell,* 108 Idaho 58, 696 P.2d 909 (1985).

■ Here we find that I.C. § 19–3501 does not require dismissal of the charges

against Dillard. Subsection 19–3501(1) requires, in the absence of good cause shown to the contrary, dismissal of the charge against an accused when no indictment or information is filed within six months of his arrest. In this case, Dillard was taken into custody upon a petition filed under the Youth Rehabilitation Act (YRA). Because of his age, as a minor, no criminal charge could be filed against him, I.C. § 18–216, unless and until an order was entered waiving jurisdiction under the YRA. I.C. § 16–1806; *Hayes v. Gardner,* 95 Idaho 137, 504 P.2d 810 (1972). Clearly, until the order waiving jurisdiction over Dillard under the YRA was finally confirmed by our Supreme Court in February 1981 (*Dillard v. State,* 101 Idaho 917, 623 P.2d 1294 (1981)), no information or indictment could be filed in the district court. Once the waiver order was upheld on appeal, an information was filed less than a month later. Because I.C. § 19–3501(1) applies only when a criminal prosecution lies, and because Dillard could not be criminally prosecuted until the order waiving jurisdiction under the YRA became final, we hold he was not denied his statutory right to a speedy trial under I.C. § 19–3501(1). Section 19–3501(1) simply did not apply to Dillard.

■ In *State v. Fairchild,* 108 Idaho 225, 697 P.2d 1239 (Ct.App.1985), we held that Fairchild had been denied his right to a speedy trial as a result of delay during an appeal by the state from a magistrate's order dismissing the charges against Fairchild. The state was successful in having the dismissal order set aside on appeal. However, twelve months expired during that appeal, due to the prosecutor's failure to diligently pursue the appeal. Consequently, the time limit required by then Rule 11, I.C.A.R., was violated.[4] Dillard argues that I.C.A.R. 11 should be applied in his case, as we did in *Fairchild.* We de-

---

4. I.C.A.R. 11 required an appeal from the magistrate division to the district court to be heard and decided not later than the first term of court after the record was filed. The "term" of the court in *Fairchild* was a six month period, *i.e.,* there were two terms in each year.

cline to do so for two reasons. First, I.C.A.R. 11 pertained to criminal appeals and thus would not apply to a YRA appeal except by analogy. Second, even if applied, I.C.A.R. 11 would not yield the same result as *Fairchild* because here, unlike there, the prosecutor was not responsible for delay exceeding six months in the appeal. Here the prosecutor arguably was responsible for about four months' delay in the appeal from the magistrate division to the district court and the court itself was responsible for the rest. As we shall explain later, the time consumed while the district court was in the process of deciding the appeal is not counted. *See State v. Russell*, 108 Idaho 58, 696 P.2d 909 (1985).

◼ We next turn to I.C. § 19–3501(2). That section requires dismissal when a defendant is not brought to trial within six months of the filing of an information or indictment, unless the trial has been postponed at the request of the defendant, or unless *good cause is shown why the trial was not held within the six-month period.* Here on August 5, 1981—within six months following the March 20, 1981 filing of the information against Dillard—the district court set the October 13, 1981 trial date. The scheduled date, however, was beyond the six-month period. Dillard made no immediate objection to the October date, nor did he assert his right to a speedy trial under I.C. § 19–3501(2) following notice on August 5 that the trial would be held on October 13. We do not believe it was necessary for Dillard to affirmatively request a trial setting within the six months period —I.C. § 19–3501(2) is self-executing. However, on August 25, 1981—still within the six months time frame—Dillard filed his request for appointment of Dr. Lunde, an out-of-state expert, to further assist in presenting the mental illness defense. Dillard's motion to retain Dr. Lunde was heard on September 9, and granted on September 11, 1981, still within the six months period, but with only nine days left before the six months term would expire on Sep-

tember 20, 1981. Under the circumstances, we believe the continuous development of Dillard's mental illness defense, including the appointment of an additional expert, Dr. Lunde, cannot be ignored, in the interest of providing Dillard with his defense and a fair trial. Also, we believe it would have been unreasonable to expect Dillard to be prepared for trial by September 20, when Dr. Lunde was only appointed on September 11. We conclude that "good cause" existed for not holding Dillard's trial within the six months required by I.C. § 19–3501(2). In summary, we hold that Dillard was not entitled to a dismissal of the charges against him either under I.C. § 19–3501(1) or (2).

B

Having determined the issues relating to the statutory right to speedy trial, we turn now to the constitutional provisions. As noted above, our analysis of the case in this respect requires application of the four-part balancing test announced in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We examine the length of the delay, the reasons for the delay, the accused's assertion of his right to a speedy trial, and prejudice occasioned by the delay.

1. *Length of delay.* As we have noted, the prosecutor in this case argued that the *Barker-Wingo* test applies only to the time frame within which a defendant is prosecuted criminally, *i.e.,* from the date a formal criminal charge is filed until the date of trial. Conversely, Dillard contends that the appropriate time frame commenced when the petition under the YRA was filed. We agree with Dillard's approach. The filing of the petition was the initial, formal action by the state which ultimately resulted in Dillard's conviction at trial. In *Barker v. Wingo*, the court noted that the "length of delay" factor was, to some extent, a triggering mechanism. 407 U.S. at 530, 92 S.Ct. at 2192. The Court said: "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will

provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." 407 U.S. at 530–31, 92 S.Ct. at 2192. Here, Dillard was put to the burden of responding to public charges when the YRA petition was filed. Therefore, we believe the starting point for considering the "length of delay" in Dillard's case must begin with the date the petition was filed, on March 23, 1978.

With modifications we have placed in brackets, a brief filed by Dillard in the district court in support of his motion to dismiss sets forth the following chronology:

| Date | Event |
| --- | --- |
| In 1978: | |
| Mar. 23 | Juvenile Petition filed |
| Mar. 30 | State's Motion to Waive Jurisdiction filed |
| Apr. 21 & 24 | Hearing on Motion to Waive Jurisdiction |
| May 22 | State files Notice of Appeal from Decision of Magistrate |
| May 31 | Defendant's Motion to Dismiss Appeal filed |
| June 15 | Motion to Dismiss Appeal denied |
| June 20 | Petition for Writ of Prohibition filed by defendant in Supreme Court of Idaho |
| Sept. 19 | Writ of Prohibition denied |
| Nov. 8 | Motion for Appellate Review filed by defendant [with District Court] |
| Dec. 12 | Order for Appellate Review entered by [District] Court |
| In 1979: | |
| Mar. 9 | Oral argument on appeal, District Court |
| Aug. 10 | District Court Decision reversing Magistrate filed |
| [Aug. 17 | Complaint filed with magistrate division] |
| Sept. 10 | Notice of Appeal to Idaho Supreme Court filed by defendant |
| In 1980: | |
| Feb. 22 | Clerk's Transcript filed with the Idaho Supreme Court |
| June 30 | Briefs submitted timely in accordance with Order of Supreme Court |
| | Request for Immediate Decision filed by defendant |
| In 1981: | |
| Feb. 25 | Decision on appeal announced |
| Mar. 9 | Preliminary Hearing [on Complaint filed August 17, 1979] |
| Mar. 19 | Defendant's Motion to Suppress filed |
| [Mar. 20 | Information filed in District Court] |
| Apr. 15 | Hearing on Motion to Suppress |
| July 31 | Order Denying Motion to Suppress entered |
| Oct. 13 | Proposed trial date |
| [Dec. 3 | Trial commenced] |

The overall length of time is not controlling; rather we must consider only the delay attributable to the state. We can disregard any period of time chargeable to the defendant. *State v. Russell*, 108 Idaho 58, 696 P.2d 909 (1985). Moreover, our Supreme Court held in *Russell* that we are to disregard any reasonable period of time attributable to a court, occurring after submission of an issue for determination, inasmuch as the expiration of such a period of time is "neutral" and not "chargeable" either to the state or the defendant. This ruling may not be free from criticism, but we are bound by it.

█ To determine whether the "length of delay" was sufficient to trigger an inquiry into an alleged denial of Dillard's right to a speedy trial, we begin with the total time period elapsing between March 23, 1978 (date the YRA petition was filed)

and December 3, 1981 (date trial commenced)—a span of forty-four months. We can disregard the time periods attributable either to Dillard or to the courts on (a) Dillard's motion to dismiss the state's appeal from the magistrate's refusal to waive jurisdiction under the YRA (one month); (b) Dillard's application to the Supreme Court for a Writ of Prohibition (three months); (c) the time consumed while the district court had the appeal from the magistrate division under advisement (five months); and (d) Dillard's appeal to the Supreme Court from the district court's order reversing the magistrate's determination (seventeen months). These time periods—totaling twenty-six months—when subtracted from the forty-four months overall time span, leaves eighteen months attributable to the state.

Our Supreme Court has held that a fourteen-month interval between the filing of a criminal charge and the date of trial is sufficient to trigger a constitutional speedy trial inquiry. Such a time period is not *per se* a denial of the right, however, when balanced against the other *Barker-Wingo* factors. *State v. Lindsay*, 96 Idaho 474, 531 P.2d 236 (1975). We now turn to those other factors.

2. *Reason for delay.* There are at least three reasons for the remaining span of time occurring in this case, considering the period attributable to the state. The first is the time consumed while the state appealed the magistrate's refusal to waive jurisdiction under the YRA. The second is the period during which the court heard and decided a motion to suppress evidence asserted by Dillard. As noted, this motion was both granted and denied, in part. The third reason relates to the development of Dillard's mental illness defense. In considering any delay attributable to the state, we focus on whether the state's activity impermissibly prolonged the proceeding through lack of diligence. *State v. Fairchild*, 108 Idaho 225, 697 P.2d 1239 (Ct. App.1985). We have reviewed the record

in this case and conclude that the state acted with reasonable diligence and did not impermissibly prolong the proceeding. We find that the reasons for the delay were permissible and justified.

3. *The accused's assertion of his speedy trial right.* This factor is an important consideration where an accused fails to assert his right, thereby acquiescing in a delay to trial. Here Dillard did assert his right, through the motion to dismiss filed the next month after the information and his arraignment.

4. *Prejudice occasioned by the delay.* "Prejudice" in a speedy trial context refers to infringement upon three interests: (a) the prevention of oppressive pretrial incarceration, (2) minimization of anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *State v. Russell*, 108 Idaho at 62, 696 P.2d at 913. At the hearing on Dillard's motion to dismiss for lack of a speedy trial, Dillard argued that he had been incarcerated for approximately thirteen hundred days since March of 1978. He understandably argued that he had suffered anxiety, but quantitatively most of it would derive from incarceration while his juvenile status was being litigated. He presented no evidence or argument that his defense had been impaired in any way as a result of the passage of time. *See State v. Holtslander*, 102 Idaho 306, 629 P.2d 702 (1981). We are unpersuaded that Dillard was substantially prejudiced in a constitutional sense.

We hold that Dillard was not deprived of his right to a speedy trial under either the federal constitution or the constitution of the State of Idaho. It follows that the trial court did not err in denying Dillard's motion to dismiss.

III

Dillard next contends he was deprived of the right to effective counsel when an appeal was not taken following his conviction

**846**

in 1982. We believe this issue has become moot in Dillard's case.

While this appeal was pending, the United States Supreme Court decided *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), involving the issue of effective assistance of counsel on appeal. The Court held that the right to effective assistance of counsel on appeal is guaranteed by due process under the United States Constitution. In *Evitts*, the attorney for a defendant who had been convicted of a felony in a Kentucky state court failed to file a "statement of appeal," required by the Kentucky appellate rule in conjunction with perfection of an appeal. Because of the attorney's failure, the appeal was dismissed. Further attempts by the defendant to have his conviction reviewed on appeal were unsuccessful in the state courts. The defendant eventually sought relief through a writ of habeas corpus in the federal district court. The federal court held that the defendant had been denied effective assistance of counsel on appeal and ordered the state court either to reinstate the defendant's appeal or to retry him. On appeal, the Supreme Court affirmed.

Thus it appears that where a defendant has been deprived of an appeal from his conviction because of ineffective assistance of counsel in perfecting an appeal, an appropriate remedy is to reinstate his right of appeal. This is exactly what happened in Dillard's case. Because Dillard has been accorded an appeal on the merits, from his conviction, it is unnecessary for us to further discuss his claim of ineffective assistance of counsel in respect to the failure to perfect an appeal in 1982.

The judgment of conviction and sentences for first degree murder and for first degree arson are affirmed.

BURNETT and SWANSTROM, JJ., concur.