696 P.2d 909

**STATE of Idaho, Plaintiff-Respondent,**

v.

**William Roger RUSSELL, Defendant-Appellant.**

**No. 15209.**

Supreme Court of Idaho.

March 5, 1985.

Alan E. Trimming, Ada County Public Defender, Boise, Laird B. Stone, Sp. Deputy Public Defender, Twin Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., P. Mark Thompson, Myrna A.I. Stahman, Deputy Attys. Gen., Boise, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from a conviction of three counts of robbery and three counts of possession of a firearm during the commission of a robbery. The conviction was entered 23 months after the complaint was filed. The sole issue on appeal is whether defendant-appellant William Russell was denied his right to a speedy trial. The trial court found that he was not. We affirm.

In a complaint filed August 25, 1981, Russell was charged with three separate armed robberies of a Citizens National Bank in Boise. At the time of the complaint, Russell was being held in the Ada County jail on a different but similar felony complaint. After a preliminary hearing, Russell was arraigned on September 18, 1981, at which time he requested that a trial date be set sometime after January 1, 1982. The court at that time advised Russell that such a continuance could present speedy trial problems and inquired if Russell would be willing to waive speedy trial rights conferred upon him by I.C. § 19–3501 (1980) (amended 1984). Russell agreed to such a waiver. Trial was then set for January 18, 1982.

In November 1981, Russell was sentenced to a 12-year indeterminate sentence, together with a 5-year indeterminate consecutive sentence upon conviction of the earlier, similar felony complaint. On December 1, 1981, Russell was extradited to Arizona to face federal charges, and on January 15, 1982, defense counsel requested a 60-day continuance, whereupon the case was continued until March 12, 1982, at

which time it was anticipated a new trial date would be set. At that March 12 appearance, the court was informed that, because of delays in Russell's cases in Arizona, his return to Idaho could not be secured until later in March. On March 19, 1982, trial was set for May 10, 1982.

Russell's counsel filed a motion to dismiss, alleging denial of his right to a speedy trial under I.C. § 19–3501. That motion was to be heard April 9, 1982, but upon motion of Russell's counsel, was postponed until April 23, 1982, at which time the motion to dismiss was denied, based upon Russell's earlier waiver of his right to speedy trial. The trial court certified the speedy trial question for appeal to this Court, and Russell appealed the denial of his motion to dismiss. On October 12, 1982, this Court denied the application for appeal by certification and remitted the cause to the district court for further proceedings.

Trial was scheduled for October 14, 1982, but Russell was absent because, due to an error, he had not been transported from the Idaho State Correctional Institution. Over the objection of defense counsel, the case was continued to October 29, 1982, at which time a trial date was set for April 4, 1983.

On the day set for trial, the district court, on its own motion, vacated the trial because of an overloaded criminal docket. On May 17, 1983, Russell filed a motion to dismiss based on I.C. § 19–3501, "for the reason that defendant's right to a speedy trial has been denied since it has been more than six (6) months since the case was remitted from the Supreme Court." That motion was denied, as was a motion to reconsider. Trial was held on July 25, 1983, and Russell was convicted on all counts. Russell filed this appeal, which raises only the issue of whether Russell was deprived of his right to a speedy trial.

We view the issue presented as being in two parts: (1) whether Russell was denied his constitutional right to a speedy trial; and (2) whether he was denied his statutory right to a speedy trial under I.C. § 19–3501.

 Defendants to criminal charges are constitutionally guaranteed a right to a speedy public trial. U.S. Const. amend. VI. This fundamental right is made binding on the states by the due process clause of the fourteenth amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). A balancing test is applied to determine whether the federal constitutional right to speedy trial has been denied, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which test considers the length of the delay, the reasons for the delay, the accused's assertion of his right, and the prejudice occasioned by the delay.

 The right to speedy trial is also guaranteed in the Idaho Constitution, Idaho Const. art. 1, § 13. This State-conferred right is not necessarily identical to the right guaranteed by the United States Constitution. *State v. Hobson*, 99 Idaho 200, 579 P.2d 697 (1978); *State v. Lindsay*, 96 Idaho 474, 531 P.2d 236 (1975).

Idaho's legislature has also addressed the issue of speedy trial. I.C. § 19–3501, at the time pertinent to the case at bar, provided in pertinent part:

"The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:

 * * * * * *

"2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court."

Prior to 1980, I.C. § 19–3501 provided in pertinent part:

"The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed in the following cases:

 * * * * * *

"(2) If a defendant, whose trial has not been postponed upon his application, *is*

*not brought to trial at the next term of the court* in which the indictment is triable, after it is found." (Emphasis added.)

Subsection (2) was amended in 1980 to its present form.

Insofar as the statutory guarantee of a speedy trial is concerned, Russell relies upon *State v. Hobson,* 99 Idaho 200, 579 P.2d 697 (1978), for his assertion that the nine month delay violated his right to a speedy trial under the provisions of I.C. § 19–3501. In *Hobson, supra,* the defendant was tried and convicted some 11 months after his appeal of a motion to dismiss was remitted back to the district court. This court found that Hobson was denied a speedy trial based upon a violation of the pre-1980 version of I.C. § 19–3501. There are similarities between *Hobson* and the instant case and there are also differences between the two. In both *Hobson* and the instant case, the prefatory language of I.C. § 19–3501 requires dismissal of the prosecution "unless good cause to the contrary is shown." In *Hobson,* the Court stated, "The State has not shown any justification for failure to prosecute appellant during the two intervening terms of court [from remittitur to trial date]," and went on to note that none of the delay was upon the appellant's application. *Hobson,* 99 Idaho at 202, 579 P.2d at 699. In the instant case, however, the State asserts that the lengthy delay prior to the issuance of the Supreme Court's remittitur was almost exclusively attributable to the appellant, being due to appellant's request that the initial trial setting be delayed, his extradition to Arizona under other criminal charges, and his appeal to this Court from his denial of a motion to dismiss. The initial delay of approximately 14 months was due almost solely to the problems and maneuvering of Russell. It would seem to be the height of nonsense to hold that the strictures of I.C. § 19–3501 required the dismissal of charges against Russell here, when the clear language of subsection (2) of the statute provides, "If a defendant *whose trial has not been postponed upon his application,* is not brought to trial within six months ..."

██ We hold that the limitations of I.C. § 19–3501 do not apply under facts as presented here, where a defendant requesting a postponement of trial date has been explicitly advised of his speedy trial rights and of the problems that will be presented if his postponement request is granted, nevertheless specifically waives his speedy trial right, and thereafter, because of his own actions, cannot be granted a speedy trial.

We further note that in the instant case, as distinguished from *Hobson* that it was not the prosecution who delayed the trial of the defendant; rather, the trial court upon its own motion vacated a trial setting because of a congested and overloaded criminal trial docket. The court stated:

"On October 28, 1982, trial was set for April 4, 1983. On April 4, 1983, this court on its own motion vacated that trial and reset it for July 25, 1983, because this court had several trials going on and had to make a decision on which trial to hold. Since the defendant had previously waived his right to a speedy trial his trial was reset. This court has reviewed all the court proceedings since October 12, 1982. The defendant from October 12, 1982 until April 8, 1983 has never given notice to the court that he was demanding his right to a speedy trial. On April 8, 1983, the defendant through his counsel stated to this court that he was not waiving his right to a speedy trial. The court, having previously vacated the scheduled trial date, was not in a position to immediately try the defendant. When this court vacated the April 4, 1983 trial date it was under the belief that the defendant had waived his right to a speedy trial and would not be prejudiced since he was already serving time in the Idaho State Penitentiary for a prior offense."

██ Here, the vacation of the trial setting for April 4, 1983 cannot be charged to the prosecution. Neither can it be charged to the defendant. Rather, it is neutral.

Therefore, we also hold that "good cause" has been shown by the *State* to justify the lack of a speedy trial.

[7] Since *Hobson* did not consider the issue of justifiable or "good cause," we deem it appropriate to consider the same factors weighed by the United States Supreme Court in cases claiming a deprivation of the constitutional right to a speedy trial, *i.e.*, those factors set out in *Barker v. Wingo, supra,* being specifically the length of the delay, the reasons for the delay, the accused's assertion of his speedy trial right, and the prejudice occasioned by the delay.

Here the time between the filing of the complaint and the date of the trial would appear inordinate on its face. However, all of that delay, with the exception of the final nine months, is chargeable, for one reason or another, to the defendant. This Court has held that delays in excess of nine months did not amount to constitutional violations. *State v. Lindsay,* 96 Idaho 474, 531 P.2d 236 (1975) (delay of 14 months). *See also State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Idaho App.1983) (delay of 12 months).

■ The cognizable delay here was nine months. We do not deem that amount of time to be inordinate, particularly in view of defendant's express waiver of his rights to a speedy trial and of the 14 month period of delay attributable to defendant. As to the causes of the nine month delay between the remittitur and trial, as we have said, such can be attributable to neither the prosecution nor the defense, but rather are neutral.

We turn to the next factor considered in *Barker v. Wingo, supra, i.e.,* the accused's assertion of his right. Following the October 12, 1982 remittitur from this Court, it was not until April 8, 1983, and again on May 17, 1983, that Russell asserted his right to a speedy trial.

■ The final and perhaps most compelling consideration of the *Barker v. Wingo* factors is the issue of prejudice to the defendant caused by the delay. In *Barker*

*v. Wingo, supra,* the court identified three interests involved in a consideration of prejudice, those being (1) the prevention of oppressive pretrial incarceration, (2) minimization of anxiety and concern of the accused, and (3) limiting of the possibility that the defense will be impaired. In the instant case there has been no oppressive pretrial incarceration, since defendant was already serving approximately 17 years in an Idaho penal institution and facing a total of 45 years incarceration on federal charges in Arizona. Those facts also make doubtful any existence or prolonging of defendant's anxiety and concern over the instant charges. There is a total lack of any information presented to this Court or to the court below tending to indicate that the defense of this action was in any way hindered by the delay.

In short, a review of the *Barker v. Wingo* factors used to determine whether good cause did in fact exist under the language of I.C. § 19–3501 reveals that the trial court was correct in ruling that good cause existed for the nine month delay between remittitur and trial.

■ Russell also asserts that the 23 month delay between the commencement of criminal proceedings and his trial violated his constitutional rights to a speedy trial. The time for computing the delay begins on August 25, 1981, the date the complaint was filed. *See U.S. v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *State v. Lindsay,* 96 Idaho 474, 531 P.2d 236 (1975).

■ While the state constitutional right to a speedy trial is not necessarily identical to the federal constitutional right, the *Barker* balancing test issue is utilized for determining whether the Idaho Constitution speedy trial right has been violated. *State v. Lindsay, supra.* A 23-month delay is sufficient to trigger judicial scrutiny of the right to a speedy trial. *See Barker v. Wingo, supra; State v. Holtslander,* 102 Idaho 306, 629 P.2d 702 (1981). The greater part of that delay is, however, attributable to the appellant and will not be

weighed against the State. *Barker v. Wingo, supra; State v. Talmage,* 104 Idaho 249, 658 P.2d 920 (1983); *State v. Campbell, supra.*

■ As noted above in our consideration of the statutorily guaranteed right to a speedy trial, the *Barker v. Wingo* balancing test does not militate in favor of the defendant, no prejudice has been shown, and the defendant's rights to a speedy trial guaranteed under both the Idaho and federal constitutions have not been violated.

The judgment of the trial court is affirmed. No costs or attorney's fees on appeal.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

The facts of this case are not in dispute. Based upon controlling statutory authority and case precedent defendant's conviction should be set aside and the charges against him dismissed.

The controlling statutory authority is I.C. § 19–3501, which states in pertinent part:

The court, unless good cause to the contrary is shown, *must* order the prosecution or indictment to be dismissed, in the following cases:

. . . .

2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within *six (6) months* from the date that the indictment or information is filed with the court. (Emphasis added.)

The controlling precedent is *State v. Hobson,* 99 Idaho 200, 579 P.2d 697 (1978), wherein this Court held:

When a criminal defendant makes a prima facie showing that his right to a speedy trial is violated under I.C. § 19–3501, the district court must determine whether "good cause" for the delay is shown by the state under our statute. In such cases the burden is on the state to show "good cause" for the delay, just as the primary responsibility for bringing

a case to trial is upon the state. *Barker v. Wingo, supra* 407 U.S. at 529, 92 S.Ct. 2182; *United States v. MacDonald,* 531 F.2d 196, 207 (4th Cir.1976); *United States v. Macino,* 486 F.2d 750, 753 (7th Cir.1973).

*Id.* at 202, 479 P.2d at 699.

In this case, defendant Russell was not brought to trial within I.C. § 19–3501's mandated six-month time period. A total of *nine and one-half months* elapsed from October 12, 1982—the date this Court refused the district court's certification of defendant's motion to dismiss—until the date the case was heard, July 25, 1983. None of this delay was caused by the defendant. Accordingly, defendant has made out a prima facie case that his statutory right to a speedy trial under § 19–3501 has been violated. Under § 19–3501, then, the only reason the district court *should not* dismiss defendant's prosecution is where good cause for the delay can be shown. Clearly the state has abjectly failed that standard in this case.

The majority opinion attempts to distinguish *Hobson* by arguing that in *Hobson* the delay was caused by the prosecution while here the delay was solely caused by the district court. Such a distinction is without a difference and amounts to a rewriting of *Hobson.* Furthermore, it flies in the face of the reasons behind I.C. § 19–3501 and an individual's constitutional right to a speedy trial.

The right to a speedy trial is designed to protect three interests: "(i) to prevent oppressive pretrial·incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker v. Wingo,* 407 U.S. 514, 532, 92 S.Ct. 2182, 2193, 33 L.Ed.2d 101 (1972). These three reasons have been adopted by this Court in *State v. Holtstander,* 102 Idaho 306, 312, 629 P.2d 702, 708 (1981). None of these reasons are in any way logically related or dependent upon *who* causes the delay, provided only that it was not the defendant. It does not matter whether the prosecution, a court, or the Board of Corrections causes the delay;

the effect is to deny the accused of his statutory and constitutional right to a speedy trial.

It is the ultimate in legal sophistry to declare that good cause is shown by the "state" for a trial delay totaling nine and one-half months when it is caused solely by a *court of the state.* Nothing in I.C. § 19–3501 suggests the legislature's intent to limit the mandate of that section to prosecutors. Furthermore, *Hobson, supra,* rejected such a bald proposition.

In *Hobson,* Justice Shepard, the author of today's opinion, was the lone dissenter. He based much of his dissent upon the argument that the delay in that case was in the most part caused by the courts. *Hobson, supra,* at 204, 579 P.2d at 701 (Shepard, J., dissenting). That argument persuaded no one then, and it is not persuasive today.

The majority's blithe suggestion that a state court of Idaho is not part of the "state" is astounding. The entire state court system has been established under Idaho's constitution. At the risk of saying the obvious, but of which the majority seems oblivious, the judicial branch of government in Idaho is as much a part of the "state" as the executive and legislative branches are. Accordingly, constitutional and statutory mandates and rights which this Court requires the other branches of government to abide by ought to be followed by this Court, too. It has been forever recognized in this Republic that we have established a government of laws, not a government of men. The Judicial Department *is* a branch of that government, and the Supreme Court of that Judicial Department should be a court of law-giving, law-applying, and precedent-following *judges*—not a court of men cloaked in robes. Appropriately to this occasion is language, not my own, which the trial bench and bar may see as befitting:

The most intolerable evil, however, under which we have lived for the past twenty-five years, has been the changing and shifting character of our judicial decisions, by which we have been deprived of the inestimable benefit of judicial precedents as a safeguard to our rights of person and property.

*Hobson, supra,* may have been wrongly decided. If so, then those who comprise today's majority of the Court, should overrule it. The trial bench and bar may well stand in bewilderment at the tacit overruling of the *Hobson* case, which received this Court's extremely close consideration from oral argument on January 7, 1977, until our opinion was issued on June 1, 1978. Especially is this so where the legislature in 1980, full well knowing of the *Hobson* decision, amended I.C. § 19–3501 to provide as it now does. The legislative department passed this remedial legislation. The executive department, through the office of the Governor, approved it. It is the law—the law of the government of Idaho. Not only are the courts not above the law, there is little doubt that the law was to prod the judicial department into swifter action on filed criminal charges. The legislature has not been remiss in providing accused citizens of Idaho with statutory safeguards.[1] In 1984 the legislature again amended § 19–3501 to provide that if defendants accused of misdemeanors were not brought to trial within six months after entering a not guilty plea, the court *must* order the prosecution dismissed. 1984 Idaho Sess. Laws 91.

Moreover, under our Idaho constitutional system of government, a factor apparently not in the minds of those who join the opinion of Justice Shepard, the prosecuting attorney is of the Judicial Department. ID. CONST., art. 5, § 18. *State v. Wharfield,* 41 Idaho 14, 236 P. 862 (1925). It is over-abundantly clear that the legislature's prodding on behalf of accused citizens has been aimed at the judicial department as a

---

1. In 1967, and ensuing years, the legislature statutorily adopted many of the rights required by *Miranda,* and other enlightened decisions of the Warren court—many of which statutory provisions were more protective of the rights of accused citizens than the seeming dictates of the High Court. I.C. § 19–851, *et seq.;* I.C. § 19–1304.

whole, including the courts and the prosecuting attorneys. For this Court to purport to judicially exempt the Judicial Department from the mandates of I.C. § 19–3501 and the United States and Idaho Constitutions ranks as judicial activism at its worst.