913 P.2d 1186

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Kevin D. BECK, Defendant–Appellant.**

**No. 20848.**

Court of Appeals of Idaho.

Feb. 27, 1996.

Petition Review Denied April 18, 1996.

Benjamin Simpson, Shoshone County Public Defender, Wallace, for appellant.

Alan G. Lance, Attorney General; Michael A. Henderson, Deputy Attorney General, argued, Boise, for respondent.

LANSING, Judge.

Kevin D. Beck entered a conditional plea of guilty to the crime of sexual abuse of a child under the age of sixteen, I.C. § 18–1506. Beck appeals the district court's denial of his motion to dismiss the charge for violation of the speedy trial guarantee provided by I.C. § 19–3501. Beck also challenges as excessive his unified eight-year sentence with a three-year minimum period of incarceration. We affirm.

**1.** Idaho Criminal Rule 11(a)(2) allows the entry of a conditional guilty plea reserving in writing the right to appeal from a "specified adverse ruling." Here, Beck purported to reserve the right to appeal from a ruling that had not yet been made on a motion that had not yet been filed. Because the prosecutor apparently acquiesced in this unconventional procedure and because the State does not question it on appeal, we do not address the propriety of this form of conditional guilty plea.

## I.

### FACTS

On November 25, 1992, an information was filed charging Beck with sexual abuse of a nine-year-old girl. A trial was set for May 17, 1993. On that date, however, the trial was vacated in order that another criminal trial, scheduled for the same date before the same judge, could go forward. A new trial date of July 6, 1993, was set for Beck's case. On June 17, 1993, however, Beck entered a conditional guilty plea pursuant to I.C.R. 11(a)(2). He reserved the right to appeal from the district court's disposition of a prospective motion to dismiss the charge due to the State's failure to bring Beck to trial within six months as required by I.C. § 19–3501(2).[1] The motion to dismiss was filed on June 25, 1993, and following a hearing, it was denied. Beck was sentenced to a unified term of eight years, with a three-year determinate term. This appeal followed.

### A. Right to a Speedy Trial Under I.C. § 19–3501

Idaho Code § 19–3501 requires that a person accused of a felony be brought to trial within six months from the filing of the indictment or information.[2] If this time limit is violated, the charges must be dismissed "unless good cause to the contrary is shown."

To establish a violation of his right under this statute, Beck must make a prima facie showing that he was not brought to trial within six months of the filing of the information and that the trial was not postponed at his request. *State v. Cotant,* 123 Idaho 787, 788, 852 P.2d 1384, 1385 (1993); *State v. Hobson,* 99 Idaho 200, 202, 579 P.2d 697, 699 (1978); *State v. Lund,* 124 Idaho 290, 292,

**2.** I.C. § 19–3501 provides in relevant part:

The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:

. . . .

2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court.

858 P.2d 829, 831 (Ct.App.1993). Here it is uncontroverted that the trial did not occur within the six-month period and that Beck neither requested nor consented to the delay.

■ With this prima facie showing having been made, the burden then shifts to the prosecution to demonstrate "good cause to the contrary." *Cotant,* 123 Idaho at 788, 852 P.2d at 1385; *Hobson,* 99 Idaho at 202, 579 P.2d at 699; *Lund,* 124 Idaho at 292, 858 P.2d at 831. To ascertain whether good cause exists under I.C. § 19–3501, the Idaho Supreme Court has adopted the balancing test set out in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191–92, 33 L.Ed.2d 101 (1972). *Cotant,* 123 Idaho at 788, 852 P.2d at 1385; *State v. Sindak,* 116 Idaho 185, 187, 774 P.2d 895, 897 (1989), *cert. denied,* 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1032 (1990); *State v. Russell,* 108 Idaho 58, 62, 696 P.2d 909, 913 (1985). The factors that are weighed in this balancing process are: (1) the length of the delay; (2) the reason or reasons for the delay; (3) the defendant's assertion of his or her speedy trial right; and (4) prejudice to the defendant occasioned by the delay. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2191–92; *Cotant,* 123 Idaho at 788, 852 P.2d at 1385; *Sindak,* 116 Idaho 185, 774 P.2d 895.

■ Because there is no bright-line test for determining good cause, the question of whether legal excuse has been shown is a matter for judicial determination based upon the facts and circumstances of each case. *State v. Stuart,* 113 Idaho 494, 496, 745 P.2d 1115, 1117 (Ct.App.1987). On appeal we independently review the lower court's decision. *State v. Johnson,* 119 Idaho 56, 58, 803 P.2d 557, 559 (Ct.App.1990); *Stuart, supra.*

### 1. Length of Delay

■ The first of the *Barker* factors is the length of the delay. In this case, the six-month period for commencement of Beck's trial expired on May 25, 1993. The time that elapsed between that date and Beck's guilty plea was twenty-three days; the delay until the second scheduled trial date of July 6, 1993, was forty-two days. A delay of this duration, though significant, does not weigh heavily in favor of dismissal.

### 2. Reason for the Delay

■ The district court found that the court's congested trial calendar was the principal factor causing the delay in bringing Beck to trial. Because of the court's full schedule, Beck was given an initial trial date of May 17, 1993, near the end of the statutory period. The crowded court docket also had led the court to schedule Beck's trial on the same date as the trial for another defendant. Because the defendant in the other case had been incarcerated longer than Beck and because his trial had been previously rescheduled, the district court gave priority to the other defendant and vacated Beck's trial.

The Idaho Supreme Court has held that a delay caused solely by the overly burdened calendar of the trial court is a neutral factor not attributable to either party. *Sindak,* 116 Idaho at 187, 774 P.2d at 897; *Russell,* 108 Idaho at 61, 696 P.2d at 912. Thus, the primary cause of the delay in bringing Beck to trial was a neutral factor in the "good cause" evaluation.

■ The district court also found, however, that conduct of Beck's defense counsel contributed to the delay. On several occasions prior to the initial trial date, the attorney who was then representing Beck told the trial court that Beck would sign a waiver of his speedy trial right and would thereby consent to postponement of his trial. Defense counsel's representations encouraged the trial court to delay Beck's trial rather than to seek some other solution to the dilemma presented by the court's calendar, such as assigning the case to another judge. On Beck's motion to dismiss, however, the court accepted Beck's assertion that he had never agreed to waive the right to a speedy trial and had never authorized his attorney to make such a representation.

The unauthorized representations of defense counsel do not constitute a waiver of Beck's rights that would preclude Beck from later asserting a violation of his right to a speedy trial. *See Stuart,* 113 Idaho at 496–97, 745 P.2d at 1117–118. The question of waiver of a right differs, however, from eval-

uation of the reason for the delay under the *Barker* balancing test; the court need not ignore defense counsel's role as a contributing cause. Accordingly, the cause of the delay is assignable primarily to the court's heavy trial schedule, but secondarily to defense counsel's representations that Beck would acquiesce in a postponement of his trial.

■ Beck argues, however, that the State had a duty, which it did not discharge, to forewarn the court of the potential speedy trial problem so the court could take steps to avoid violating I.C. § 19–3501. According to Beck, unless it is shown that the prosecutor notified the court of an impending speedy trial deadline and gave the court an opportunity to avoid a violation, the State has not demonstrated good cause for the delay. In such a circumstance, Beck avers, the defendant is relieved of any need to show either a timely assertion of his right to a speedy trial or prejudice resulting from the delay.

For these arguments, Beck relies upon *State v. Cotant, supra.* In that case, three magistrates in succession disqualified themselves. Because of delays occasioned by these recusals, the matter was not assigned to the magistrate who ultimately presided until some four and one-half months after Cotant's arraignment. The magistrate scheduled a pretrial conference one day before the expiration of the statutory six-month period. At the pretrial conference, Cotant asserted his right to a speedy trial under Section 19–3501. The magistrate then agreed to clear his calendar so the trial could be conducted on the next day, but both parties were unable to have witnesses available on such short notice. The court then scheduled a trial date that was about two months beyond the statutory deadline. Prior to the trial date, however, the magistrate granted Cotant's motion to dismiss for violation of Section 19–3501. The Supreme Court affirmed the dismissal, stating:

> The State cannot simply [sit] back and attribute delay to the court without at least notifying the court of an impending speedy trial problem and giving the court an opportunity to respond by assigning the case to an out of county magistrate or otherwise

expediting the trial process. . . . [T]here is an affirmative duty on the State to see to it that the case is brought to trial within the statutory time period.

*Cotant,* 123 Idaho at 789, 852 P.2d at 1386. Based upon this language from *Cotant,* Beck argues that unless the State shows that it forewarned the court of the statutory deadline, it cannot demonstrate good cause for the delay of Beck's trial.

We do not perceive the *Cotant* decision to have the sweeping effect urged by Beck. In *Cotant,* the presiding magistrate was unaware that most of the six-month statutory period for bringing the defendant to trial had already expired before the magistrate's assignment, and the magistrate therefore had no knowledge of the impending speedy trial deadline. The Supreme Court made clear that in that circumstance the State has an affirmative duty to notify the court of a possible speedy trial problem. In Beck's case, by contrast, it is apparent that the district court was fully aware of the scheduling problem and the statutory deadline. The potential violation of I.C. § 19–3501 evidently had been the subject of discussion between the court and the parties when defense counsel indicated that Beck would consent to postponement of his trial and waive his speedy trial right. We do not understand the *Cotant* decision to impose upon the State an obligation to formally inform the court of that which the court already knows. The delay here resulted not from the court's unawareness of the problem but from its overburdened calendar. Accordingly, we conclude that the delay of Beck's trial cannot be attributed to any failure of the prosecutor to notify the trial court of the impending deadline.

### 3. Defendant's Assertion of Right

■ A defendant's early assertion of his or her speedy trial right can prevent a violation of Section 19–3501 from occurring by alerting the prosecutor and the court to attempt compliance with the statute before compliance becomes impossible. Beck did not assert his statutory right to a speedy trial until after the six-month period had expired.

In *Barker, supra,* the United States Supreme Court explained the significance of the defendant's assertion of his speedy trial right as a factor in the balancing test:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93. In *State v. Holtslander,* 102 Idaho 306, 629 P.2d 702 (1981), the Idaho Supreme Court quoted the foregoing statement from *Barker,* and went on to observe:

> "[D]eprivation of the speedy trial right may work to the accused's advantage by the state's witnesses becoming unable to testify because of fading memories or unavailability.... [A] defendant's assertion of his right to a speedy trial may reflect whether or not a defendant actually wanted a speedy trial."

*Id.* at 312, 629 P.2d at 708. Thus, the import of the defendant's assertion of his or her speedy trial right largely relates to the way in which it affects the other *Barker* factors. An early and vigorous demand for a speedy trial both lends credence to a defendant's assertion of prejudice from delay and diminishes the extent to which the reason for the delay may be assigned to a defendant. Although a failure to assert the right within the statutory period does not relieve the State of its duty to comply with I.C. § 19–3501, an early assertion of the right will militate in the defendant's favor.

Here, because Beck's assertion of his statutory speedy trial right was made only after the expiration of the time limit, this factor does not lend weight to his argument for dismissal.

### 4. Prejudice to the Defendant

Prejudice to the defendant caused by the delay is the final and most important factor in the *Barker* test. *Cotant,* 123 Idaho at 789, 852 P.2d at 1386; *Russell,* 108 Idaho at 62, 696 P.2d at 913. Prejudice to an accused may arise from extended pretrial incarceration, prolonged anxiety and concern over the pending charges or impairment of the accused's ability to present a defense. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. *See also Cotant,* 123 Idaho at 789, 852 P.2d at 1386. Of these possible forms of prejudice, impairment of the defense is the most serious. *Id.* Beck makes no argument that he was prejudiced, other than pointing out that he was incarcerated while awaiting trial.

The fact of pretrial incarceration favors the defendant in a speedy trial analysis, but the weight to be accorded this element of prejudice is proportionate to the length of that incarceration. Here, Beck was incarcerated twenty-three days in excess of the six-month period when he entered his guilty plea.

### 5. Balancing

With respect to the balancing of the foregoing factors, the United States Supreme Court stated in *Barker,* 407 U.S. at 533, 92 S.Ct. at 2193:

> We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*See also Cotant,* 123 Idaho at 790, 852 P.2d at 1387; *Holtslander,* 102 Idaho at 313, 629 P.2d at 709. This balancing process is committed, in the first instance, to the trial court. Here the district court carefully weighed each of these four factors, concluded that the

balance tipped against dismissal and denied Beck's motion to dismiss the proceedings.

Upon reviewing the trial court's decision, we find no error. Here, defense counsel contributed in some measure to the cause of the delay; the length of the delay and the claimed prejudice are both slight; and Beck made no effort to prevent the claimed prejudice by demanding a speedy trial during the six-month statutory period or at any time prior to his guilty plea. In these circumstances, we conclude that the district court properly held that dismissal of the charges, predicated upon violation of the time limitations of I.C. § 19–3501, was not warranted.

## B. Sentence Review

Following Beck's conditional guilty plea, the trial court imposed a sentence of eight year's incarceration with a three-year determinate term. The court retained jurisdiction for 180 days pursuant to I.C. § 19–2601, but ultimately relinquished jurisdiction following an unfavorable report from the Department of Correction regarding Beck's conduct during the retained jurisdiction period. On appeal, Beck asserts that the sentence is excessive.

■ When a sentence is challenged on appeal, our review is directed to determining whether the district court abused its discretion by imposing an unreasonable sentence. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). The reasonableness of a sentence must be measured against the objectives of sentencing, which are the protection of society, the deterrence of crime, the rehabilitation of the offender, and punishment or retribution. *State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978); *Toohill, supra.* In conducting our review we treat the minimum term specified by the trial court—in this case three years—as the probable duration of confinement. *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App. 1989).

■ A sentence will be found to constitute an abuse of discretion if it is excessive under any reasonable view of the facts surrounding the case. *State v. Charboneau,* 124 Idaho 497, 500, 861 P.2d 67, 70 (1993); *State*

*v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). Accordingly, in reviewing a sentence we conduct an independent examination of the record, focusing upon the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982).

■ The offense in this case was the sexual abuse of a nine-year-old girl by touching or fondling her chest and buttocks with intent to gratify the defendant's sexual desire. Evidence before the court showed that the defendant also made lewd remarks to the victim and exhibited to her movies depicting nude females. In determining the sentence, the district court relied upon Beck's prior criminal record. Beck had been previously charged with two crimes involving children: infliction of injury upon a child and lewd and lascivious acts with a child under the age of fourteen. Beck had been convicted of battery once and had been the subject of two other warrants for battery. He had also been twice charged with exhibition of a deadly weapon.

■ The district court had the benefit of further information presented in the presentence investigation report. However, this report was not made part of the record on appeal. It is an appellant's burden to provide an adequate record to substantiate his or her claims of error before the appellate court, *State v. Beason,* 119 Idaho 103, 105, 803 P.2d 1009, 1011 (Ct.App.1991); *State v. Murinko,* 108 Idaho 872, 873, 702 P.2d 910, 911 (Ct.App.1985), and where pertinent portions of the record are missing on appeal, they are presumed to support the actions of the trial court. *Wolfe,* 99 Idaho at 390, 582 P.2d at 736; *State v. Repici,* 122 Idaho 538, 541, 835 P.2d 1349, 1352 (Ct.App.1992). Therefore, we presume that information in the presentence report supports the trial court's sentencing decision.

Given the nature of Beck's offense, his prior criminal history, and Beck's failure to provide a complete record on appeal, we find no abuse of discretion in the sentence imposed.

The order denying Beck's motion to dismiss and the sentence imposed by the district court are affirmed.

WALTERS, C.J., and PERRY, J., concur.