990 P.2d 742

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael Angelo HERNANDEZ, Defendant–Appellant.**

No. 24686.

Court of Appeals of Idaho.

Sept. 28, 1999.

Review Denied Dec. 20, 1999.

John M. Adams, Chief Kootenai County Public Defender; J. Bradford Chapman, Deputy Public Defender, Coeur d'Alene, for appellant. J. Bradford Chapman argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Judge.

Michael Angelo Hernandez appeals from his judgment of conviction for aggravated battery, which arose from a fight in a convenience store parking lot. Hernandez contends that the district court erred in failing to grant his motion to dismiss the charges on the ground that Hernandez's statutory and constitutional rights to a speedy trial had been violated. He also challenges the district court's order precluding Hernandez's use of evidence about the victim's reputation for violence to support Hernandez's claim that the battery was justified as an act taken in self-defense or in defense of others. Hernandez also complains that the district court gave an impermissible dynamite instruction to the jury, and that his sentence is excessive.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Hernandez, then age seventeen, and his two friends, Chance Quinlivan and Quinlivan's wife, drove into the parking lot of a convenience store, parked their car, and entered the store. At about the same time, Kip Richardson, with his girlfriend as a passenger, parked nearby, and Richardson's girlfriend went into the store. Richardson, apparently being of the view that Quinlivan had looked at Richardson's girlfriend in an inappropriate way, began yelling when Quinlivan, his wife and Hernandez exited the store. This prompted Quinlivan to grab a baseball or T-ball bat from his car. Richardson then left his own vehicle, approached Quinlivan, and grasped the bat. A struggle over the bat ensued between Richardson and Quinlivan. Hernandez did not initially join the fight but entered the fracas when Quinlivan called for help. The evidence as to what occurred is in dispute as to many details, but according to Hernandez's testimony, he drew a pocket knife from his pocket, opened the blade and walked up to the combatants. According to Hernandez, Richardson turned toward Hernandez in a crouch, as if he were about to tackle Hernandez, and Hernandez then stabbed Richardson in the back. He

continued to stab as Richardson picked Hernandez up into the air and thereafter as the two struggled on the ground. Quinlivan then pulled Richardson off of Hernandez, and Hernandez stood up. As Richardson also started to get up from the pavement, Hernandez stabbed him twice again. Hernandez, Quinlivan and Quinlivan's wife then departed the scene in their vehicle.

Hernandez was arrested ten days later and was initially charged as a juvenile. Ultimately, however, the State charged Hernandez as an adult with aggravated battery. Prior to trial, Hernandez filed a motion to dismiss the charge for violation of his right to a speedy trial, but the Court denied the motion. Hernandez proceeded to a jury trial and was found guilty. The court sentenced him to fifteen years of incarceration, with a five-year minimum term.

On appeal, Hernandez claims error in the denial of his motion to dismiss, in the district court's exclusion of evidence of the victim's reputation for violence, and in a comment made to the jury by the district court which Hernandez characterizes as a "dynamite instruction." Hernandez also asserts that the sentence imposed by the district court is excessive.

## II.

## ANALYSIS

### A. Speedy Trial

Hernandez was arrested on May 12, 1997. He was initially charged as a juvenile with aggravated assault, but the prosecutor thereafter moved to dismiss the juvenile petition and charged Hernandez as an adult with attempted first degree murder. Following a preliminary hearing, however, the magistrate

1. This Court has no record of the juvenile proceedings or criminal proceedings against Hernandez predating the magistrate's order of August 29, 1997, waiving juvenile jurisdiction. The foregoing summary of those proceedings is based upon representations made by the prosecutor and defense counsel at the hearing on Hernandez's motion to dismiss for violation of his speedy trial rights.

2. Idaho Code § 19–3501 provides in part:

refused to bind Hernandez over on the attempted murder charge, but did bind him over for aggravated battery. That action was dismissed on Hernandez's motion for lack of jurisdiction because the State had not obtained a waiver of jurisdiction under the Juvenile Corrections Act, Idaho Code §§ 20–501, et seq. (J.C.A.). The State then filed a new juvenile petition alleging aggravated battery. On August 29, 1997, the magistrate in the juvenile proceeding waived jurisdiction under the J.C.A. and ordered that Hernandez be held for adult criminal proceedings pursuant to I.C. § 20–508. Accordingly, the complaint initiating the present adult proceeding was filed on September 2, 1997, and an information was filed on September 19, 1997.[1]

Hernandez filed a document asserting the right to a speedy trial on September 9, 1997, and on November 20, 1997, he filed a motion to dismiss the charge, alleging a deprivation of his statutory and constitutional rights to a speedy trial. The denial of this motion forms the basis for Hernandez's first claim of error on this appeal.

### 1. Statutory right to speedy trial

■ Idaho Code § 19–3501(2)[2] provides that unless good cause to the contrary is shown, a felony prosecution must be dismissed "[i]f a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court." Hernandez argues that the six-month allowance under this statute began to run when the first juvenile petition was filed against him on or about May 13, 1997. He urges that a juvenile petition

The court, unless good cause to the contrary is shown, must order the prosecution or indictment to be dismissed, in the following cases:
1. When a person has been held to answer for a public offense, if an indictment or information is not found against him and filed with the court within six (6) months from the date of his arrest.
2. If a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the indictment or information is filed with the court.

should be considered the equivalent of an "information or indictment" under the statute because it is a similar charging device which would cause jeopardy to attach. Because Hernandez's trial did not occur until February 9, 1998, nearly nine months after the initial juvenile petition, he concludes that the provisions of § 19–3501 require dismissal of the charges against him.

The argument that § 19–3501 applies to juvenile proceedings that lead into adult criminal proceedings has previously been considered and rejected by this Court. In *State v. Dillard*, 110 Idaho 834, 718 P.2d 1272 (Ct.App.1986), a petition alleging the commission of murder was filed in March 1978 against Dillard, a minor, under the Youth Rehabilitation Act (Y.R.A.), the predecessor to the current J.C.A.[3] The State sought waiver of Dillard's juvenile status so he could be charged and tried as an adult. Dillard resisted the waiver, and an appeal was taken to the Idaho Supreme Court, which in February 1981, affirmed the district court's determination that Dillard could be tried as an adult. An information charging Dillard with first degree murder and first degree arson was then filed in March 1981, with the trial thereon conducted in December 1981. Dillard asserted that the charges against him should be dismissed because no information or indictment was filed within six months of his being taken into custody under the Y.R.A. He contended that this was a violation of the provision of § 19–3501(1) that a prosecution must be dismissed if an indictment or information is not filed within six months from the date of his arrest. This Court held that no violation of § 19–3501(1) had occurred, explaining:

> Because of his age, as a minor, no criminal charge could be filed against him, I.C. § 18–216, unless and until an order was entered waiving jurisdiction under the

Y.R.A. Clearly, until the order waiving jurisdiction over Dillard under the Y.R.A. was finally confirmed by our Supreme Court in February 1981, no information or indictment could be filed in the district court. Once the waiver order was upheld on appeal, an information was filed less than a month later. Because I.C. § 19–3501(1) applies only when a criminal prosecution lies, and because Dillard could not be criminally prosecuted until the order waiving jurisdiction under the Y.R.A. became final, we hold he was not denied his statutory right to a speedy trial under I.C. § 19–3501(1). Section 19–3501(1) simply did not apply to Dillard.

*Dillard*, 110 Idaho at 842, 718 P.2d at 1280. (Citations omitted.)

█ By the same reasoning, the provisions of § 19–3501(2) did not apply to Hernandez until jurisdiction under the J.C.A. had been waived. The criminal information initiating the present action could not be filed before August 29, 1997, when the juvenile court entered its order waiving jurisdiction under the J.C.A. The information was filed on September 17, 1997, and Hernandez's trial began less than six months later, on February 9, 1998. Therefore, Hernandez has not demonstrated a violation of I.C. § 19–3501(2).[4]

### 2. Constitutional right to speedy trial

Hernandez next argues that the speedy trial guarantees of the United States and Idaho Constitutions were violated in his case. The Sixth Amendment to the United States Constitution and Article I, § 13 of the Idaho Constitution both specify that in criminal cases the accused shall have "the right to a speedy and public trial." Article I, § 18 of the Idaho Constitution also directs that "a speedy remedy [shall be] afforded for every injury of person, property or character, and

---

**3.** The Juvenile Corrections Act was adopted in 1995, at which time portions of the Youth Rehabilitation Act were amended and redesignated, and portions were repealed. *See* 1995 Idaho Sess. Laws, ch. 44.

**4.** Hernandez also alleges a violation of I.C. § 19–106, which provides that "in a criminal action the defendant is entitled: (1) to a speedy and public trial." However, this section merely re-

states the speedy trial protection granted by Article I, § 13 of the Idaho Constitution, and both are comparable to the protection provided by the Sixth and Fourteenth Amendment to the United States Constitution. *State v. Carter*, 103 Idaho 917, 921, 655 P.2d 434, 438 (1981). We discuss the constitutional guarantees, *infra*, and therefore do not separately address I.C. § 19–106.

right and justice shall be administered without sale, denial, delay, or prejudice."

■ For application of the federal constitutional guarantee, the United States Supreme Court enunciated a balancing test in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The *Barker* test has also been adopted for determining whether there has been a violation of the speedy trial provisions of the Idaho Constitution. *State v. Russell,* 108 Idaho 58, 62, 696 P.2d 909, 913 (1985). The factors weighed in the balancing process are the length of the delay before trial, the reason or reasons for the delay, the defendant's assertion of his or her speedy trial right, and prejudice to the defendant occasioned by the delay. *Barker,* 407 U.S. at 530, 92 S.Ct. at 2191, 33 L.Ed.2d at 116; *State v. Cotant,* 123 Idaho 787, 788, 852 P.2d 1384, 1385 (1993).

■ Unlike the speedy trial guarantee of I.C. § 19–3501, which measures timeliness from the date of filing the information or indictment, the constitutional guarantees apply from the date when either formal charges are filed *or the defendant is arrested,* whichever occurs first. *United States v. Marion,* 404 U.S. 307, 320–21, 92 S.Ct. 455, 463–64, 30 L.Ed.2d 468, 478–79 (1971); *State v. Holtslander,* 102 Idaho 306, 310, 629 P.2d 702, 706 (1981). Hernandez was arrested on May 12, 1997 and remained in custody throughout the State's attempts to properly charge him in an adult proceeding. This continuous period of incarceration was based upon the same alleged conduct for which Hernandez was ultimately charged as an adult on September 2, 1997. Thus, his May 12 arrest is the date from which delay is measured for purposes of constitutional analysis. Approximately nine months elapsed between Hernandez's arrest and the beginning of his trial in February, 1998.

Prosecutorial actions contributed to the delay in bringing Hernandez's case to trial. Although the record before us is sketchy, it appears that a significant part of the interlude between Hernandez's arrest on May 12 and the filing of the complaint on September 2, 1997, was caused by the State's effort to charge Hernandez with attempted first degree murder, which the magistrate found to be unsupported by probable cause, and by the State's initial failure to comply with procedural requirements for the waiver of jurisdiction under the J.C.A. with respect to the aggravated battery charge.[5] The record discloses no reason for the remaining interval between the filing of the complaint in September 1997 and the trial date of February 9, 1998, other than the necessities of the trial court's crowded calendar.

■ It appears that the delay for which the prosecution can be faulted occurred between May 12 and approximately July 23 when the State filed a petition under the J.C.A. alleging that Hernandez had committed aggravated battery. The period from that date until August 29 was apparently reasonably spent accomplishing the investigation and hearing that were necessary prerequisites to the August 29 order waiving juvenile jurisdiction. *See* I.C. § 20–508. Thus, the delay attributable to the State is approximately two and one-half months—a delay that is not condoned but is not extremely egregious.

■ Hernandez evidently filed a document asserting his right to a speedy trial in September 1997, and he filed his motion to dismiss for deprivation of that right on November 20, 1997. A defendant's assertion of his speedy trial right is significant to show that he has not acquiesced in delay. *Dillard,* 110 Idaho at 845, 718 P.2d at 1283. Hernandez's invocations of the right sufficiently indicated that he did not acquiesce in delay. However, it must also be noted that the record reveals no objection by Hernandez to his trial setting and no request for an earlier trial.

■ Prejudice to the defendant is the most important factor in the *Barker* balancing test. *Cotant,* 123 Idaho at 789, 852 P.2d at 1386; *State v. Beck,* 128 Idaho 416, 421, 913 P.2d 1186, 1191 (Ct.App.1996). "Prejudice" in a speedy trial context refers to in-

---

5. It should be observed that the State was not required to obtain a waiver of juvenile court jurisdiction before proceeding in adult court on the attempted first degree murder charge. *See* I.C. §§ 20–505(5), 20–509(1).

fringement upon three interests: 1) the prevention of oppressive pretrial incarceration, 2) minimization of anxiety and concern of the accused, 3) limiting the possibility that the defense will be impaired. *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118; *Russell,* 108 Idaho at 62, 696 P.2d at 913. Infringement of the third interest is the most serious form of prejudice "because the inability of the defendant adequately to prepare his case skews the fairness of the entire system." *Barker, supra.* Any prejudice in this case falls within the first two categories, for Hernandez does not assert that his defense was in any way hindered by delays in the proceedings.

■ The district court weighed the *Barker* factors in coming to its decision that the balance tipped against a finding of a constitutional violation in Hernandez's case. This Court cannot say that the district court erred in this determination. The fact that Hernandez was incarcerated throughout the pretrial period is problematical but does not, by itself, establish such prejudice from the State-engendered delay that dismissal is compelled. We conclude, as did the district court, that the nine-month lapse between Hernandez's arrest and his trial, absent any prejudice to the presentation of his defense, is not such an unreasonable period as to mandate relief under the constitutional balancing test.

## B. Exclusion of Evidence of Victim's Character

■ During voir dire of the jury at the outset of Hernandez's trial, defense counsel indicated that he intended to present evidence regarding the victim's reputation in the community as a violent and dangerous man. After voir dire, and before calling any witnesses, the prosecutor made a motion seeking to exclude evidence about the character of the victim, Mr. Richardson. In op-

position to the motion, Hernandez's counsel argued that evidence of Richardson's reputation for violence was relevant to Hernandez's claim of self-defense and defense of others because such evidence was probative on the question of who instigated the fight. Defense counsel informed the court that, if permitted to do so, he would present this evidence through a police officer who would testify that Richardson's reputation for violent behavior was such that even policemen approached him only with great caution. The district court granted the State's motion, however, holding that the testimony regarding the victim's propensity for violent acts would be relevant only if the defendant was aware of the victim's reputation at the time of the altercation between the defendant and the victim. On appeal, Hernandez argues that the district court erred in excluding this evidence of Richardson's reputation as a violent and dangerous man. We conclude that Hernandez is correct.

■ Idaho Rule of Evidence 404 provides that, as a general matter, evidence about a person's character or a particular trait of character is not admissible for the purpose of proving that the person acted in conformity therewith during a particular incident.[6] However, that rule also delineates certain exceptions to the general rule of exclusion. Relevant in this case is the exception contained in I.R.E. 404(a)(2), which allows evidence of a pertinent character trait of a crime victim when such evidence is offered by the accused. Thus, a defendant in a criminal prosecution may introduce evidence of a trait of the victim's character in order to raise an inference that the victim acted consistently with that trait on the occasion in question. Of course, as the rule specifies, the evidence must relate to a *pertinent* trait of the victim's character. That is, the character evidence must be relevant to a material issue in the case.

6. In pertinent part, I.R.E. 404 states:

(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

. . . .

(2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor. . . .

■ Hernandez argues that the evidence he proffered in this case was relevant to his claim that he acted to defend himself and his friend, Quinlivan, against an attack by Richardson. We agree that the district court erred in granting the prosecutor's motion to exclude evidence of Richardson's reputation for violence in the face of Hernandez's assertion that he would claim self-defense or defense of others. In *State v. Arrasmith*, 132 Idaho 33, 41, 966 P.2d 33, 41 (Ct.App.1998), we observed that evidence of the character of a homicide victim "may serve to buttress a claim of self-defense and to establish that the victim was the first aggressor." [7] The same principle is applicable when the crime in question is a battery rather than a homicide. Proof of the pertinent trait of character may be made by testimony as to the person's reputation or by testimony in the form of an opinion. I.R.E. 405; *State v. Dallas*, 109 Idaho 670, 679 n. 3, 710 P.2d 580, 589 n. 3 (1985). The admissibility of such evidence to substantiate an allegation of self-defense is well recognized under the corresponding federal rule. *See United States v. Bautista*, 145 F.3d 1140 (10th Cir.1998); *United States v. Keiser*, 57 F.3d 847 (9th Cir.1995), *cert. denied, Bautista v. United States*, 516 U.S. 1029, 119 S.Ct. 255, 142 L.Ed.2d 210 (1998); McCORMICK ON EVIDENCE § 193 (John William Strong ed., 4th ed.1992). Indeed, the Advisory Committee's note to F.R.E. 404(a) indicates that an intended application of the rule was to allow evidence of an individual's violent disposition to suggest an inference that the person was the aggressor in an affray.

■ The district court was incorrect in holding that, when the character evidence is offered for this purpose, the defendant must show that he had knowledge of the victim's violent disposition. When the evidence is offered to show conforming behavior by the victim, the defendant need not show that he had prior knowledge of the victim's violent disposition, for whether the defendant was aware of the victim's propensity for violence has no bearing upon the likelihood that the

victim acted in conformity with that propensity on a particular occasion. This was aptly explained by the Ninth Circuit Court of Appeals in *Keiser*, 57 F.3d at 854:

> Rule 404(a)(2) provides one of the few instances in which character evidence *is* admissible to allow the jury to infer that a person acted on a specific occasion in conformity with his character. The rule does not contemplate that the character evidence will somehow reveal the defendant's state of mind at the time he acted in self-defense.
>
> . . . .
>
> The fact that section 404(a)(2) is an exception to the rule against introducing character evidence to imply that a person acted in conformity with that character on a particular occasion suggests that the very purpose of victim character evidence is to suggest to the jury that the victim did indeed act in conformity with his violent character at the time of the alleged crime against him. The purpose is not to provide insight into the reasonableness of the thought processes of the defendant. Thus, whether the defendant knew of the victim's character at the time of the crime has no bearing on whether victim character evidence should come in under section 404(a)(2).

*See also United States v. Burks*, 470 F.2d 432 (D.C.Cir.1972); 22 CHARLES ALLEN WRIGHT AND KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5237, at 398 (1978); Annotation, *Admissibility of Evidence as to Other's Character or Reputation for Turbulence on Question of Self–Defense by One Charged With Assault or Homicide*, 1 A.L.R.3d 571 § 8 (1965).

■ On the other hand, evidence of the defendant's awareness of the victim's violent reputation or behavior *is* necessary foundation when character evidence is offered to support a different element of the defense of self-defense or defense of others—that the defendant reasonably feared the victim and reasonably believed that the force used was necessary to repel the victim's attack. When

---

7. In *Arrasmith,* we affirmed the exclusion of the proffered character evidence, however, because the defendant had presented no evidence of some

aggressive act by the victim upon which the defendant could predicate a claim of self-defense.

evidence of a victim's violent or aggressive nature is offered for this second purpose, the evidence is admissible only if it is shown that the defendant was aware of the victim's violent character, for otherwise the defendant's actions could not have been influenced by it. *See* Annotation, *supra* at § 7. It is worth observing that, when the evidence is used for this second purpose, Rule 404(a) is entirely inapplicable because the character evidence is not being offered "for the purpose of proving that the [victim] acted in conformity therewith on a particular occasion." *See Arrasmith, supra; Keiser,* 57 F.3d at 853; *State v. Bland,* 337 N.W.2d 378, 382–83 (Minn.1983); *State v. Duncan,* 111 N.M. 354, 805 P.2d 621, 623 (1991); 22 WRIGHT & GRAHAM, *supra* § 5237, at 398.

Although it must be acknowledged that courts have often confused these two purposes of victim character evidence, logic dictates that the defendant's awareness of the victim's aggressiveness is irrelevant to the first purpose and is essential to the relevance of the character evidence for the second purpose. Thus, in light of defense counsel's explanation that the evidence would be offered under Rule 404(a) to show that Richardson was the aggressor, it was error for the district court to exclude evidence of Richardson's reputation for violence on the ground that Hernandez was unaware of that reputation.[8]

▮▮▮▮ We must next address whether the district court's error was harmless in view of the totality of the evidence presented in this case. An error in the admission or exclusion of evidence will be deemed harmless if it does not impact a substantial right of the accused. I.C.R. 52; *State v. Thompson,* 132 Idaho 628, 977 P.2d 890 (1999); *State v. Rivas,* 129 Idaho 20, 27, 921 P.2d

197, 204 (Ct.App.1996). In order to determine whether a substantial right has been affected, the reviewing court must closely examine the record to see whether the error contributed to the verdict below. *Thompson, supra; Rivas,* 129 Idaho at 28, 921 P.2d at 205. An error will be deemed harmless if, and only if, the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the error. *Id.*

▮▮▮▮ Our review of the trial record in Hernandez's case convinces us that the jury would have reached the same decision had the evidence of the victim's reputation for violence and aggression been admitted. The conduct and force employed by one who claims self-defense or defense of others must be reasonable. *State v. Scroggins,* 91 Idaho 847, 849, 433 P.2d 117, 119 (1967). A battery cannot be justified as self-defense or defense of another after any threat from the victim has subsided and resistance from the defendant has become unnecessary. *State v. Mason,* 111 Idaho 660, 670, 726 P.2d 772, 782 (Ct.App.1986). The jury in Hernandez's trial was correctly instructed that:

> The kind and degree of force which a person may lawfully use in self-defense or defense of another are limited by what a reasonable person in the same situation as such person, seeing what that person sees and knowing what that person knows, then would believe to be necessary. Any use of force beyond that is regarded by the law as excessive. Although a person may believe that the person is acting, and may act, in self-defense or defense of another, he is not justified in using a degree of force clearly in excess of that apparently and reasonably necessary under the existing act and circumstances.

---

8. The district court may have had in mind the common law evidentiary rule, articulated by the Idaho Supreme Court long before adoption of the Idaho Rules of Evidence as follows:

> Where self-defense is interposed and it appears that there was a more or less mutual combat between the parties, the reputation of the deceased for being turbulent, quarrelsome and dangerous, *if communicated to the appellant prior to the affray,* is admissible as bearing upon the question of who was the probable aggressor and whether or not the appellant

had reasonable cause to believe that his life was in danger.

*State v. Wilson,* 41 Idaho 616, 631, 243 P. 359, 362 (1925) (emphasis added). To the extent that the italicized qualification upon use of reputation evidence was intended to apply when the evidence was offered to show who was the probable aggressor, we believe that it is inconsistent with I.R.E. 402 (pertaining to admissibility of relevant evidence) and 404(a) and does not survive adoption of the Idaho Rules of Evidence.

The jury was also instructed that "when there is no longer any reasonable appearance of danger, the right of self-defense ends."

The trial testimony revealed that Hernandez intervened in the scuffle when his friend, Quinlivan, and the victim, Richardson, were struggling over the bat. Richardson had not gained control of the bat and was not wielding it against Quinlivan when Hernandez stepped in. The evidence at trial also reflected that Hernandez stabbed Richardson at least twelve times in the back and neck. At least one of the neck wounds struck and opened the carotid artery. By Hernandez's own testimony, his last two thrusts of the knife were in Richardson's neck and came after Hernandez and Richardson had separated, Quinlivan had returned to his vehicle, and Richardson, unarmed, was attempting to get up from the pavement. This evidence shows, first, that Hernandez himself was never in any danger or under any threat from Richardson until Hernandez joined the fracas. Thus, Hernandez's only colorable justification was that he reasonably came to the defense of Quinlivan. However, any evidence regarding Richardson's propensity for violence, offered to show that he was the initial aggressor against Quinlivan, would not explain the final two knife thrusts by Hernandez. Further, Hernandez introduced the use of a knife into a fracas which, up to that point, involved only two young men struggling for the control of a T-ball or baseball bat. Hernandez's action escalated the fight to one of potentially lethal proportions. We are convinced that, even if the proffered evidence of Richardson's character had been admitted, any reasonable jury still would have found that Hernandez was not acting in self-defense or in lawful defense of Quinlivan when he inflicted the final stab wounds. Thus, we conclude that, although the district court erred in excluding the evidence of the victim's reputation for violence and aggressive behavior, that error was harmless when viewed in light of the evidence in this case.

### C. The District Court's Comment to Jury

 next argues that the district court erred in a comment made to the jury informing the jurors that they would have to continue deliberating until the court authorized them to break for the day. The exchange occurred when the jury, having begun its deliberations, had delivered a note to the judge with a question about the jury instructions. The jurors were brought back to the courtroom, and the court responded to their note. One of the jurors then informed the judge that, "We decided that we were going to knock off at five today." The court responded, "You'll knock off, sir, when I say you'll knock off." Hernandez claims that the court's comment amounted to a "dynamite instruction" that coerced a premature verdict and deprived him of a fair trial.

 A dynamite instruction is one that directs a deadlocked jury to continue deliberating and exhorts those jurors holding a minority view to reconsider their position. *State v. Martinez*, 122 Idaho 158, 162, 832 P.2d 331, 335 (Ct.App.1992); *State v. Clay*, 112 Idaho 261, 263, 731 P.2d 804, 806 (Ct. App.1987). In order to avoid juror coercion, Idaho has declared a "blanket prohibition against dynamite instructions." *State v. Flint*, 114 Idaho 806, 812, 761 P.2d 1158, 1164 (1988).

The court's comment that is challenged in this case can by no means be viewed as a dynamite instruction. First, there was no indication that the jury was deadlocked; and, second, nothing in the comment suggests, even indirectly, pressure from the court for any jurors to reevaluate their stance. Thus, the court's statement forms no basis for reversal as a dynamite instruction.

### D. Sentence

 As his final issue on appeal, Hernandez argues that his sentence is unduly harsh in light of his youth, his "relatively law-abiding life," and the provocation for his offense.

 Our review of a sentence is based on an abuse of discretion standard. *State v. Wolfe*, 99 Idaho 382, 582 P.2d 728 (1978); *State v. Morris*, 131 Idaho 562, 961 P.2d 653 (Ct.App.1998). Reasonableness is a fundamental requirement in the exercise of sentencing discretion. *State v. Broadhead*, 120 Idaho 141, 814 P.2d 401 (1991) *overruled on*

*other grounds by State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992); *Morris,* 131 Idaho at 567, 961 P.2d at 658. The reasonableness of a sentence is determined by focusing on the probable length of confinement, which is the minimum period of incarceration imposed by the sentencing judge. *State v. Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct. App.1989). A clear abuse of discretion is shown only if, considering the sentencing objective of protecting society and any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case, the sentence imposed is excessive under any reasonable view of the facts. *State v. Charboneau,* 124 Idaho 497, 500, 861 P.2d 67, 70 (1993); *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). When evaluating a sentence, we consider both the nature of the offense and the character of the offender. *State v. Hernandez,* 121 Idaho 114, 117–18, 822 P.2d 1011, 1014–15 (Ct.App. 1991); *State v. Lopez,* 106 Idaho 447, 449–51, 680 P.2d 869, 871–73 (Ct.App.1984).

The offense for which Hernandez was sentenced is serious. Although it is a mitigating factor that Hernandez did not initiate the confrontation, by the time the fight ended, he had stabbed the victim at least twelve times. One of the knife wounds severed the victim's carotid artery and could have caused his death from loss of blood had he not received immediate medical care. Another stab wound punctured the victim's lung. While Hernandez had no prior convictions or juvenile offenses, there was evidence before the sentencing court of other batteries he had committed against family members.

 The district court specifically reviewed the four objectives of sentencing and weighed Hernandez's age, lack of a serious criminal record, and potential for rehabilitation. The district court determined that the sentence met the sentencing goals. The violent nature of the crime and the near death of the victim support that decision. The issue presented to this Court is not whether the sentence is one that we would have chosen, but whether the sentence is plainly excessive under any reasonable view of the facts. *Toohill,* 103 Idaho at 568, 650 P.2d at 710. If reasonable minds might differ as to whether the sentence is excessive, this Court is not free to substitute its view for that of the trial court. *Id.* Having reviewed the record in this case, we cannot say that the district court abused its discretion with respect to the sentence imposed.

### III.

### CONCLUSION

Hernandez has not demonstrated a violation of either statutory or constitutional speedy trial rights. Although the district court erred in granting the State's motion to exclude evidence of the victim's propensity for violence, which should have been allowed under I.R.E. 404(a)(2), the error was harmless in light of the trial evidence, including Hernandez's own testimony, which negated his claim of self-defense or defense of others. Hernandez's complaint that the district court gave the jury a dynamite instruction is without merit, and we find no abuse of discretion in sentencing. Accordingly, the judgment of conviction and sentence are affirmed.

Judge SCHWARTZMAN, and Judge Pro Tem HARDING, concur.